**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re<br><br>53 STANHOPE LLC, *et al.*,[1]<br><br>               Debtors. | Chapter 11<br>Case No.: 19-23013 (RDD)<br>(Jointly Administered) |
| BROOKLYN LENDER LLC,<br><br>               Appellant,<br>     v.<br>D & W Real Estate Spring LLC, *et al.*,<br>               Appellees. | Case No. 07-21-cv-05177-UA |

## BROOKLYN LENDER'S EMERGENCY MOTION FOR (I) A STAY OF THE D&W CONFIRMATION ORDER PENDING APPEAL OF THE DISALLOWANCE ORDER AND THE D&W CONFIRMATION ORDER AND (II) AN EXPEDITED BRIEFING SCHEDULE

---

[1]      The Debtors in these chapter 11 cases and the last four digits of each Debtor's taxpayer identification number are as follows: 53 Stanhope LLC (4645); 55 Stanhope LLC (4070); 119 Rogers LLC (1877); 127 Rogers LLC (3901); 325 Franklin LLC (5913); 618 Lafayette LLC (5851); C & YSW, LLC (2474); Natzliach LLC (8821); 92 South 4th St LLC (2570); 834 Metropolitan Avenue LLC (7514); 1125-1133 Greene Ave LLC (0095); APC Holding 1 LLC (0290); D & W Real Estate Spring LLC (4591); Meserole and Lorimer LLC (8197); 106 Kingston LLC (2673); Eighteen Homes LLC (8947); 1213 Jefferson LLC (4704); 167 Hart LLC (1155) (collectively, the "Debtors").

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Brooklyn Lender LLC is a limited liability company.  It has no parent corporation and no public corporation owns 10% or more of interests in the company.

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................. 1

FACTUAL AND PROCEDURAL BACKGROUND.................................. 5

    A.    The Mortgages ............................................................ 5

    B.    The Chapter 11 Cases and the Debtors' First Amended Plan ............... 5

    C.    The Disallowance Order ................................................... 6

    D.    Brooklyn Lender's Appeal of the Disallowance Order ..................... 7

    E.    The D&W Plan and the D&W Confirmation Order ........................ 8

APPLICABLE LEGAL STANDARD ..................................................... 8

ARGUMENT ................................................................................ 9

I.    Brooklyn Lender Will Suffer Irreparable Harm if a Stay Is Not Granted. ......... 9

II.    Brooklyn Lender Has a Substantial Likelihood of Success on Appeal. ........... 12

    A.    Brooklyn Lender Is Substantially Likely to Prevail in its Appeal of the
            Disallowance Order. ..................................................... 12

            1.    The Bankruptcy Court Erred in Determining that the Ownership
                    Defaults Are Not Enforceable Under New York Law. ................... 13

                    a.    The Ownership Defaults Necessarily Impair the Lender's
                            Security and Make Payment of the Loan Less Likely. ................ 14

                    b.    The Ownership Representations and Defaults Are Material. ....... 15

            2.    The Bankruptcy Court Erred In Disallowing Brooklyn Lender's
                    Claims for Default Interest on Account of the Bankruptcy Defaults........ 19

    B.    Brooklyn Lender Is Substantially Likely to Prevail in its Appeal of the
            D&W Confirmation Order. ............................................... 20

            1.    The Bankruptcy Court Erred In Reducing Brooklyn Lender's Legal
                    Fees By More Than 85%. ............................................ 20

            2.    The Bankruptcy Court Erred In Approving A Plan That Assumes
                    Feasibility Without Evidentiary Support. ............................. 22

III.     Any Harm to Debtors Will Be Mitigated By Brooklyn Lender's Waiver of Default Interest and Offer of Alternative Financing. ................................................................... 23

IV.     The Public Interest Favors the Issuance of a Stay. ........................................................... 25

REQUEST FOR EXPEDITED BRIEFING SCHEDULE ........................................................... 25

CONCLUSION ................................................................................................................................ 25

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*100 Eighth Ave. Corp. v. Morgenstern*,
    164 N.Y.S.2d 812 (App. Div. 1957) ...................................................................................17

*In re 785 Partners LLC*,
    470 B.R. 126 (Bankr. S.D.N.Y. 2012) ...........................................................................19, 25

*In re 8315 Fourth Ave. Corp.*,
    172 B.R. 725 (Bankr. E.D.N.Y. 1994) ...............................................................................22

*In re Adelphia Commc'ns Corp.*,
    361 B.R. 337 (S.D.N.Y. 2007) .................................................................................9, 10, 25

*In re Advanced Mining Sys., Inc.*,
    173 B.R. 467 (S.D.N.Y. 1994) ...........................................................................................10

*In re Agency for Deposit Ins., Rehab., Bankr. & Liquidation of Banks*,
    2004 WL 414831 (S.D.N.Y. Mar. 4, 2004) .......................................................................12

*Americans United for Separation of Church & State v. City of Grand Rapids*,
    922 F.2d 303 (6th Cir. 1990) ..............................................................................................25

*Blomgren v. Tinton 763 Corp.*,
    238 N.Y.S.2d 435 (App. Div. 1963) ...................................................................................17

*In re Bownetree, LLC*,
    2009 WL 2226107 (Bankr. E.D.N.Y. July 24, 2009) .........................................................20

*Chase Manhattan Bank v. Motorola, Inc.*,
    184 F. Supp. 2d 384 (S.D.N.Y. 2002) ...............................................................................18

*In re Drexel Burnham Lambert Grp. Inc.*,
    138 B.R. 723 (Bankr. S.D.N.Y. 1992) ...............................................................................22

*Empire State Bldg. Assocs. v. Trump Empire State Partners*,
    667 N.Y.S.2d 31 (App. Div. 1997) .....................................................................................17

*Fidelity Fed. Sav. & Loan Ass'n v. Cuesta*,
    458 U.S. 141 (1982) ...........................................................................................................14

*Fifty States Mgmt. Corp. v. Pioneer Auto Parks, Inc.*,
    389 N.E.2d 113 (N.Y. 1979) ..............................................................................................13

*In re Fontainebleau Las Vegas Holdings, LLC*,
    417 B.R. 651 (S.D. Fla. 2009) ..............................................................18

*In re Gen. Growth Props.*,
    451 B.R. 323 (Bankr. S.D.N.Y. 2011) ...................................................19

*Goldstein v. Miller*,
    488 F. Supp. 156 (D. Md. 1980), *aff'd*, 649 F.2d 863 (4th Cir. 1980), *cert.*
    *denied sub nom.*, *Goldstein v. Regan*, 454 U.S. 828 (1981) .......................12

*Graf v. Hope Bldg. Corp*,
    171 N.E. 884 (N.Y. 1930).......................................................................13

*Hirschfeld v. Bd. of Elections in the City of N.Y.*,
    984 F.2d 35 (2d Cir. 1993)........................................................................9

*Karas v. Wasserman*,
    458 N.Y.S.2d 280 (App. Div. 1982) .......................................................17

*MBIA Ins. Corp. v. Credit Suisse Sec. LLC*,
    2020 WL 7041787 (N.Y. Cty. Sup. Ct. 2020) .......................................18

*Metzen v. United States*,
    19 F.3d 795 (2d Cir. 1994)......................................................................17

*In re Mills*,
    77 B.R. 413 (Bankr. S.D.N.Y. 1987).......................................................21

*In re Motors Liquidation Co.*,
    539 B.R. 676 (Bankr. S.D.N.Y. 2015)...............................................11, 12

*In re N.W. Airlines Corp.*,
    2007 WL 3376895 (Bankr. S.D.N.Y. Nov. 9, 2007) .............................20

*In re Netia Holdings, S.A.*,
    278 B.R. 344 (Bankr. S.D.N.Y. 2002) ...................................................11

*NML Capital v. Republic of Arg.*,
    17 N.Y.3d 250 (2011) .............................................................................13

*Petroleos de Venezuela S.A. v. MUFG Union Bank, N.A.*,
    2020 WL 7711522 (S.D.N.Y. Dec. 29, 2020) .......................................24

*Pfeiffer v. Silver*,
    712 F.2d 799 (2d Cir. 1983)....................................................................17

*R2 Invs., LDC v. Charter Commc'ns, Inc. (In re Charter Commc'ns)*,
    691 F.3d 476 (2d Cir. 2012)....................................................................10

*In re Residential Capital, LLC*,
  508 B.R. 851 (Bankr. S.D.N.Y. 2014) ............................................................20, 21

*Rockaway Park Series Corp. v. Hollis Automotive Corp.*,
  135 N.Y.S.2d 588 (Sup. Ct. 1954) ......................................................................17

*Ruskin v. Griffiths*,
  269 F.2d 827 (2d Cir. 1959) .................................................................................19

*Safeco Ins. Co. of Am. v. M.E.S., Inc.*,
  2010 WL 5437208 (E.D.N.Y. Dec. 17, 2010), *amended by* 2010 WL 5475655
  (E.D.N.Y. Dec. 30, 2010) .......................................................................................9

*In re St. Johnsbury Trucking Co., Inc.*,
  185 B.R. 687 (S.D.N.Y. 1995) ......................................................................10, 12

*Stith v. Hudson City Sav. Inst.*,
  313 N.Y.S.2d 804 (Sup. Ct. 1970) ......................................................................14

*In re Sultan Realty, LLC*,
  2012 WL 6681845 (Bankr. S.D.N.Y. Dec. 21, 2012).........................................20

*Teachers Ins. and Annuity Ass'n of Am. v. Ormesa Geothermal*,
  1991 WL 254573 ..................................................................................................24

*In re Tribune Co.*,
  477 B.R. 465 (Bankr. D. Del. 2012) ...................................................................11

*Tunnell Publ'g Co. v. Straus Comm'ns., Inc.*,
  565 N.Y.S.2d 572 (App. Div. 1991) ....................................................................17

*In re Vest Assocs.*,
  217 B.R. 696 (Bankr. S.D.N.Y. 1998).................................................................20

*Vt. Teddy Bear Co., Inc. v. 538 Madison Realty Co.*,
  807 N.E.2d 876 (N.Y. 2004) ................................................................................13

*In re Woodmere Invs. Ltd. P'ship*,
  178 B.R. 346 (Bankr. S.D.N.Y. 1995).................................................................22

*In re Young Broad. Inc.*,
  430 B.R. 99 (Bankr. S.D.N.Y. 2010) ...................................................................22

*Zona Inc. v. Soho Centrale*,
  704 N.Y.S.2d 38 (App. Div. 2000) ......................................................................17

**Statutes**

11 U.S.C. § 506(b) ..........................................................................................19, 21

11 U.S.C. § 1123(d)................................................................................................21

11 U.S.C. § 1129(a)(11)..........................................................................................22

Brooklyn Lender LLC ("Brooklyn Lender") hereby moves for an order, pursuant to 8007(b), 8013(a)(2)(B), and 8013(d) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for (i) a stay of the Bankruptcy Court's order (as amended on June 10, 2021, the "D&W Confirmation Order," Ex. D[2]) confirming the *Corrected Second Amended Plan of Reorganization for D&W Real Estate Spring LLC and Meserole and Lorimer LLC*, Ex. A at Ex. A (the "D&W Plan" or the "Refinance Plan"), proposed by D&W Real Estate Spring LLC and Meserole and Lorimer LLC (the "D&W Debtors") in the above-referenced bankruptcy cases (the "Chapter 11 Cases"), pending appeal of the D&W Confirmation Order[3] and the Disallowance Order, and (ii) an expedited briefing schedule, and in support hereof, respectfully states:

## PRELIMINARY STATEMENT

Since it acquired the existing loan to the D&W Debtors, Brooklyn Lender has sought to enforce its rights under the plain terms of a loan agreement entered into by sophisticated parties, nothing more. The Pending Appeals are necessary because the Bankruptcy Court disallowed the proper amount of Brooklyn Lender's claim despite its clear contractual rights, and now has

---

[2] "Ex __" refers to exhibits to the Affidavit of Jennifer S. Recine submitted herewith. "Bankr. Dkt. No. __" refers to docket entries in the jointly-administered Bankruptcy Cases. "Appeal Dkt. No. __" refers to docket entries in the Disallowance Order Appeal. "Dkt. No." refers to docket entries in this appeal. Capitalized terms not herein defined shall have the definitions ascribed in the D&W Plan.

[3] Brooklyn Lender has appealed the D&W Confirmation Order (the "D&W Confirmation Appeal"). (Bankr. Dkt. No. 284.) Brooklyn Lender also has an appeal pending (the "Disallowance Order Appeal," and with the D&W Appeal, the "Pending Appeals") of the modified bench ruling (the "Bench Ruling," at Appeal Dkt. No. 1-2) and final order (the "February 2021 Order," at Appeal Dkt. No. 1-1, and with the Bench Ruling, the "Disallowance Order"). Brooklyn Lender seeks to stay the D&W Confirmation Order, because, among other reasons, it incorporates the Court's Disallowance Order by setting Brooklyn Lender's claim amount without the default interest at issue in the Disallowance Order Appeal. The Disallowance Order Appeal should be fully briefed in July 2021. Brooklyn Lender seeks to expedite the D&W Confirmation Order Appeal so that it can be considered with the Disallowance Order Appeal, pursuant to Bankruptcy Rule 8013(a)(2)(B).

confirmed the D&W Plan, which will moot entirely Brooklyn Lender's ability to ever collect the full amount of its claim, even if it were to win on appeal.

This is a strange case. The Bankruptcy Court has already determined on the factual record that the D&W Debtors (i) intentionally misrepresented their ownership structure to Signature at loan origination (the "Ownership Defaults") and (ii) filed bankruptcy petitions (the "Bankruptcy Defaults"), and that both events constitute events of default under the loan agreement. The Bankruptcy Court also determined, pursuant to the law in this Circuit, that Brooklyn Lender did nothing wrong nor unconscionable by purchasing the debt and pursuing a default. Yet, the Bankruptcy Court still held that Brooklyn Lender was not entitled to an award of default interest as expressly permitted by the loan agreement.

The Bankruptcy Court's decision disallowing Brooklyn Lender's claims for default interest arising from the Ownership Defaults and Bankruptcy Defaults rests on legally erroneous footing. The Bankruptcy Court stretched beyond applicable legal precedent and, frankly common sense, to find that these defaults were not a valid basis for acceleration or the accrual of default interest under New York law. New York courts recognize that contracts between sophisticated, business people, advised by legal counsel and negotiated at arm's length, should be enforced according to their terms—especially in the context of real property transactions, where commercial certainty is of paramount importance. Courts use their equitable powers to deny enforcement only in ***rare*** cases in which a borrower demonstrates fraud, bad faith, or unconscionable conduct. The facts here do not present such a "rare" case. Again, it is not wrongful to enforce the terms of a contract. And the Bankruptcy Court found that the D&W Debtors misrepresented their ownership to shield its true owner from creditors—demonstrating that equity weighs in favor of enforcing the contract.

Further, the Ownership Defaults are most analogous to defaults for the transfer of control

2

of collateral, which are strictly enforced in New York because they impair the ability of a lender to choose its borrower. The Bankruptcy Court erred in comparing the defaults in these cases to insignificant and trivial defaults, ***especially*** because it is clear under the loan documents that the defaults are material. As a matter of practicality, the Bankruptcy Court's decision cannot stand because it would leave lenders without any way to police borrowers' ownership representations, which are, as the Bankruptcy Court acknowledged, part of the complex regulatory framework governing banks and requiring them to know their customers. The Bankruptcy Court likewise erred because the Bankruptcy Defaults are enforceable. The law in this Circuit provides that payment of post-petition default interest is required where, as here, debtors are solvent and such payment would not harm any unsecured creditors. This is so even where debtors are current on payment and the only default is the filing of Chapter 11 petitions.

Brooklyn Lender has also appealed the D&W Confirmation Order, which is based on the Bankruptcy Court's plainly wrong decision (i) to disallow 85% of Brooklyn Lender's claims for legal fees and expenses to litigate the events of default, including the intentional ownership misrepresentations that the Bankruptcy Court determined were in fact made, and (ii) that the D&W Plan was feasible notwithstanding lack of any evidence that sufficient cash will exist to fund a claim by Bunk Williamsburg LLC ("Bunk Williamsburg") in the amount of $783,933.04 into the Disputed Claim Reserve as required by the terms of the D&W Plan. In particular, the Bankruptcy Court erred in disallowing fees for the extensive, and expensive, legal work done at its specific direction, including briefing on lenders' regulatory obligations to know their customers, and normal course fees and expenses inherent in addressing the bankruptcy filed by the D&W Debtors in contravention of the loan agreements.

There is an explanation for the degree to which the Bankruptcy Court reached to deny

Brooklyn Lender the contract damages to which it is entitled—the Bankruptcy Court was openly hostile and outwardly disdainful of Brooklyn Lender's pursuit of its contract rights. Throughout the proceedings, the Bankruptcy Court made no effort whatsoever to conceal its animus towards Brooklyn Lender, calling it a "hog[]" and "reprehensible, cavalier, and destructive." The Bankruptcy Court held Brooklyn Lender to account at every turn, while letting the D&W Debtors—the principals of which the Bankruptcy Court had determined effectively committed bank fraud—run roughshod over their reporting and discovery obligations. The Bankruptcy Court's biased view of Brooklyn Lender colored its ability to objectively analyze the merits of the case. For this reason, it is especially important that this Court review this motion anew and grant the relief essential to preserving Brooklyn Lender's right to appellate review.

If the D&W Confirmation Order is not stayed, the Pending Appeals will in all likelihood be deemed equitably moot, leaving Brooklyn Lender without appellate rights with respect to two meritorious appeals presenting important questions in this Circuit. At the same time, the Debtors will suffer little or no harm, because Brooklyn Lender will provide other security pursuant to Bankruptcy Rule 8007(c)—waiving default interest accrued on and after June 30, 2021 (in the event Brooklyn Lender is unsuccessful in its appeal), and offering financing to the D&W Debtors on ***better terms*** than is available under the Maguire Exit Financing Facility (in the event that Maguire's funding is no longer available), as reflected in a commitment letter (the "Commitment Letter"). Indeed, Brooklyn Lender is willing to go further, providing a bond to cover legal and administrative fees and costs associated with the D&W Debtors staying in bankruptcy pending appeal. The balance of harms thus vastly favors granting a stay.

For these reasons and those set forth below, this Court should grant Brooklyn Lender's motion for a stay of the D&W Confirmation Order pending its appeal of the Disallowance Order

and the D&W Confirmation Order.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.     The Mortgages

Between 2012 and 2016, Signature Bank ("Signature") made loans to the Debtors (collectively, the "Loans") secured by mortgages (collectively, the "Mortgages") on the Debtors' real estate located in Brooklyn, New York (collectively, the "Properties"). The Mortgages set forth events of default that make the Debt (as defined in the Mortgages) due and payable at the option of the lender. (*See, e.g.,* Ex. F at 10-12.) Upon acceleration, all amounts due under the Loans must be repaid, and interest accrues at the default rate of 24% per annum (the "Default Rate") from the date of the underlying default. (*Id.* at 12.) On May 17, 2017, Signature assigned the Mortgages and other Loan documents to Brooklyn Lender.

### B.     The Chapter 11 Cases and the Debtors' First Amended Plan

On May 20, 2019 and May 21, 2019 (collectively, the "Petition Date"), the Debtors commenced the Chapter 11 Cases by filing voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). The Chapter 11 Cases are being jointly administered for procedural purposes. (Bankr. Dkt. No. at 2.)

On August 9, 2019, Brooklyn Lender filed a proof of claim against each of the Debtors, asserting claims against the Debtors (the "Brooklyn Lender Secured Claims") for default interest on account of: (a) the Ownership Defaults; (b) certain Debtors' encumbrances of mortgaged property without the lender's prior written consent (the "Encumbrance Defaults"); (c) the Debtors' failure to cure building violations on the Properties (the "Violation Defaults"); (d) certain Debtors' failure to pay the debt when the Loans matured on their own terms (the "Maturity Defaults"); and (e) the Bankruptcy Defaults. (*See, e.g.*, Ex. G at 4-10.) Brooklyn Lender also asserted claims for legal fees and expenses, along with interest thereon, arising in connection with Brooklyn Lender's

efforts to enforce the Mortgages. (*Id.* at 15.) On October 27, 2019, the Debtors filed partial objections to Brooklyn Lender's proofs of claim. (Bankr. Dkt. No. 50.)

On January 21, 2020, the Debtors filed their *Amended Plan of Reorganization* (the "First Amended Plan"), which sought to pay off Brooklyn Lender's claims without default interest. (Bankr. Dkt. Nos. 93.) On April 22, 2020, Brooklyn Lender filed its *Omnibus (I) Response to Debtors' Objection to Brooklyn Lender LLC's Claims and (II) Objection to Confirmation of Debtors' Amended Plan of Reorganization*. (Bankr. Dkt. No. 125.)

Between August 3, 2020 and August 7, 2020, the Bankruptcy Court held a hearing on confirmation of the Amended Plan and the Debtors' objections to Brooklyn Lender's claims. (Bankr. Dkt. Nos. 163-169.) At the close of trial the Bankruptcy Court called Brooklyn Lender a "hog[]," noting that "hogs get slaughtered," and stated that Brooklyn Lender "may get away with it" if the banking regulations required disclosure of ownership. (Bankr. Dkt. No. 169 at 195-98.)

### C. The Disallowance Order

On February 19, 2021, the Bankruptcy Court issued the Disallowance Order granting in part and denying in part the Debtors' objections to Brooklyn Lender's claims. The Court allowed in full Brooklyn Lender's claims for default interest as to the Maturity Defaults, and allowed in part Brooklyn Lender's claims for default interest as to the Encumbrance Defaults. (*See* Order at 3.) The Court disallowed Brooklyn Lender's claims for default interest on the Violation Defaults, the Ownership Defaults, and the Bankruptcy Defaults. (*Id.* at 2-3.) Based on its partial allowance of default interest, the Bankruptcy Court determined that the First Amended Plan was not feasible and denied confirmation. (Bench Ruling at 50; Order at 2.)

As to the Ownership Defaults, the Bankruptcy Court held that Brooklyn Lender established that the Debtors misrepresented their ownership at loan origination by claiming that Chaskiel Strulovitch, in most cases, owned 100% of the Debtors' equity interests, and in other instances,

more than 95% of the Debtors' equity interests. (Bench Ruling at 37.) Specifically, the Court found that Brooklyn Lender "established that the ownership interests of Mr. Strulovitch's affiliates and relatives"—including the ownership interests of Joshua Wagshal, Moses Guttman, and certain limited liability companies in which certain Israeli investors (the "Israeli Investors") held interests—"were not fully disclosed" "in or in connection with their loan applications." (*Id.*)

Importantly, the Bankruptcy Court made the following finding as to the D&W Debtors:

> Both Mr. Strulovitch and Mr. Wagschal acknowledged that Mr. Wagschal had a greater interest in certain of the Debtors than was disclosed in or in connection with the loan applications for those Debtors. One can reasonably infer from Mr. Wagschal's testimony that titular ownership of these Debtors was transferred in large measure by Mr. Wagschal to Mr. Strulovitch to shield them from Mr. Wagschal's creditors, with the two men recognizing that Mr. Wagschal nevertheless would in effect be entitled to most or all of these Debtors' value and would have the major say in their management.

*Id.* at 36. Nevertheless, the Bankruptcy Court held that the Ownership Defaults were not "the type of default that would serve as a basis for acceleration or enforcement of default interest" under New York law because they did not impair the collateral or impact the Debtors' ability to repay the loan. (*Id.* at 25-27, 37-40.)

As to the Bankruptcy Defaults, the Bankruptcy Court concluded post-default interest was not recoverable under Section 506(b) of the Bankruptcy Code: (i) "[w]hen the only default was the bankruptcy filing itself" and (ii) "there is no doubt that the lender will be paid in full and, in fact, the lender has been paid currently under its agreement." (*Id.* at 23-24.)

### D. Brooklyn Lender's Appeal of the Disallowance Order

On March 5, 2021, Brooklyn Lender filed a notice of appeal of the Bankruptcy Court's decisions with respect to the Ownership Defaults, the Bankruptcy Defaults, and the amount of the Encumbrance Defaults. The Disallowance Order Appeal was docketed on April 1, 2021. (*See*

Appeal Dkt. No. 1.)  Brooklyn Lender filed its opening brief on May 6, 2021.  (Appeal Dkt. No. 5.)  On May 27, 2021, the Debtors filed a letter requesting an extension of time to July 7, 2021 to file their opposition, which was granted.  (Appeal Dkt. No. 6.)  The Disallowance Order Appeal will be fully briefed by July 28, 2021.

E.    **The D&W Plan and the D&W Confirmation Order**

On April 21, 2021, the Debtors filed the D&W Plan, proposing to refinance Brooklyn Lender's loan with exit financing from Maguire Capital Group LLC (the "Maguire Exit Financing Facility," and "Maguire," respectively).  (*See* Ex. A.)  The D&W Plan purports to pay Brooklyn Lender default interest on account of the Maturity Defaults, and sought to disallow all but "small amounts" of Brooklyn Lender's legal fees "incurred in asserting maturity defaults." (*Id*. at 7.)  The Maguire Exit Financing Facility will close on or before June 30, 2021.  (Ex. B.)

On May 27, 2021, the Bankruptcy Court held a hearing on the D&W Plan.  Brooklyn Lender objected to confirmation on the grounds that the D&W Plan (i) failed to account for $782,782.52 in total legal fees (comprised of $507,176.65 in legal fees and expenses and $275,605.87 in interest) and (ii) failed to demonstrate reserves sufficient to account for Bunk Williamsburg's $783,933.04 claim.  (*See generally* Ex. C at 36-221.)  The D&W Confirmation Order was entered on June 9, 2021, as amended on June 10, 2021 (Ex. D).

On June 9, 2021, Brooklyn Lender moved for a stay from the Bankruptcy Court.  (Bankr. Dkt. No. 281.)  The motion was denied in an oral bench ruling on June 10, 2021.  At the hearing, the Bankruptcy Court called Brooklyn Lender's efforts to enforce its contract rights "reprehensible, cavalier, and destructive."  An order denying the stay motion was entered on June 11, 2021.  (Bankr. Dkt. No. 286.)

**APPLICABLE LEGAL STANDARD**

There are four factors to consider in weighing this motion for a stay pending appeal:  (1)

whether the movant will suffer irreparable injury absent a stay, (2) whether a party will suffer substantial injury if a stay is issued; (3) whether the movant has demonstrated a substantial possibility, although less than a likelihood, of success on appeal, and (4) the public interests that may be affected. *In re Adelphia Commc'ns Corp.*, 361 B.R. 337, 346 (S.D.N.Y. 2007); *Hirschfeld v. Bd. of Elections in the City of N.Y.*, 984 F.2d 35, 39 (2d Cir. 1993).

"[T]he Second Circuit has consistently treated the inquiry of whether to grant a stay pending appeal as a balancing of factors that must be weighed." *Adelphia Commc'ns Corp.*, 361 B.R. at 367. The most important factor is irreparable harm. *Id.* The balancing approach weighs the irreparable harm suffered by the movant against potential substantial injury to other parties if a stay is issued and whether the movant has established a substantial possibility of success on appeal. *Id.* The probability of success that must be demonstrated is "inversely proportional" to the irreparable injury that the movant will suffer absent a stay. *Id.* More of one factor excuses less of the other. *Id.*

## ARGUMENT

### I.    Brooklyn Lender Will Suffer Irreparable Harm if a Stay Is Not Granted.

Brooklyn Lender will suffer irreparable harm if the D&W Confirmation Order is not stayed pending appeal. In considering the movants' motion for a stay pending appeal, the Court should bear in mind the critical role a stay pending appeal plays, not only in maintaining the status quo, but in preserving the right to a review on the merits. *See Adelphia*, 361 B.R. at 348; *see also Safeco Ins. Co. of Am. v. M.E.S., Inc.*, 2010 WL 5437208 (E.D.N.Y. Dec. 17, 2010) ("*Maintaining the status quo* means that a controversy will still exist once the appeal is heard"), *amended by* 2010 WL 5475655 (E.D.N.Y. Dec. 30, 2010).

Absent a stay pending appeal, the D&W Debtors will close on the Maguire Exit Financing Facility on or around June 24, 2021. Once financing closes with Maguire, the Refinance Plan will

be substantially consummated. Maguire will have a lien against the D&W Debtors properties and will no doubt argue that it is a bona fide lender for value, making it nearly impossible to undo the financing in the event Brooklyn Lender prevails on its Pending Appeals. Moreover, the Maguire loan is bridge financing, and an additional conveyance to more traditional financing is expected imminently. There is no *lis pendens* available to alert the next lender of Brooklyn Lender's appeal. With each successive conveyance, the more complicated it comes to unscramble the egg. For these reasons, Brooklyn Lender's claims will likely be deemed "equitably moot," in light of the presumption of mootness when a plan has been substantially consummated pending appeal, as soon as the Maguire Exit Financing Facility has closed. *See $R^2$ Invs., LDC v. Charter Commc'ns, Inc. (In re Charter Commc'ns),* 691 F.3d 476, 482 (2d Cir. 2012).

The "loss of appellate rights is 'a quintessential form of prejudice.'" *Adelphia*, 361 B.R. at 348. The irreparable harm requirement is satisfied "where the denial of a stay pending appeal risks mooting *any* appeal of *significant* claims of error." *Id.*; *see also In re St. Johnsbury Trucking Co., Inc.*, 185 B.R. 687, 689-90 (S.D.N.Y. 1995) (movant established irreparable injury where it demonstrated a risk that its appeal would be mooted absent a stay); *In re Advanced Mining Sys., Inc.*, 173 B.R. 467, 469 (S.D.N.Y. 1994) (granting stay and holding that "a denial of a stay would moot the appeal and deny . . . any recovery," which "is a quintessential form of prejudice").

After closing on the Maguire Exit Facility, it will be difficult, if not impossible, to unwind, undermining Brooklyn Lender's right to review on the merits of its Pending Appeals. The D&W Plan releases and extinguishes all of the Brooklyn Lender Secured Claims against the reorganized successor entities, leaving no practical way to recover if relief is granted post Effective Date. (Ex. A at 17, 21-22.) Even if the Disallowance Order and D&W Confirmation Order are reversed on appeal, there is no certainty there will be funds or property sufficient to satisfy the Brooklyn Lender

Secured Claims. The successor entities will be single purpose entities holding real estate assets. Once Maguire has a lien on the properties, Brooklyn Lender's security is gone. The financing is extremely expensive, robbing the properties of value, and likely eliminating the possibility of recovery.[4] Further, nothing will prevent the D&W Debtors (and Mr. Wagschal whom the Bankruptcy Court found actually owns and controls these Debtors) from conveying interests in the properties to others. By contrast, the status quo would be preserved if a stay were granted, ensuring that Brooklyn Lender will be able to recover in the event it is successful in the Pending Appeals.

Further, courts have found irreparable harm where, as here, an approved plan would make distributions to creditors and as a result, it would be difficult to "unscramble the egg," because "it is unlikely that the distributions could be recovered, or, if recoverable, would be challenging and costly." *In re Tribune Co.*, 477 B.R. 465, 477 (Bankr. D. Del. 2012); *see also In re Motors Liquidation Co.*, 539 B.R. 676, 683 (Bankr. S.D.N.Y. 2015) (irreparable injury established where "as a practical matter, it would be impossible or very difficult to get any distributions back"); *In re Netia Holdings, S.A.*, 278 B.R. 344, 357 (Bankr. S.D.N.Y. 2002) ("[I]f the funds leave [the debtor], they will be distributed to diverse parties and be difficult or impossible to recover. This is of course a concrete example exemplifying the well established principle that piecemeal distribution of the debtor's estate constitutes irreparable harm.").

Here, distributions of cash and equity interests—the value of which should go to Brooklyn Lender to pay its claims, including default interest that the Bankruptcy Court disallowed—will be made to various claimants and equity holders, making it practically impossible to fashion effective relief if Brooklyn Lender is successful in the Pending Appeals. In addition, interests in the ten

---

[4]     Indeed, it is highly unlikely that the D&W Debtors will be able to service the Maguire debt, given its extraordinary expense. In the event that Maguire forecloses, Brooklyn Lender's ability to recovery vanishes with the sale of the collateral through a foreclosure proceeding.

Properties themselves—the only true value in the estate—will be transferred at least twice and possible more times to lenders and owners before the appeals are resolved. There is little doubt that the unwinding of these transactions and conveyances (if even possible) will be time-consuming, burdensome, and costly, particularly given the history of scorched-earth litigation by the D&W Debtors. *In re Agency for Deposit Ins., Rehab., Bankr. & Liquidation of Banks*, 2004 WL 414831, at *3 (S.D.N.Y. Mar. 4, 2004) (granting stay pending appeal where movant would otherwise be "severely, and quite possibly irretrievably, harmed, by a premature distribution . . . that will not readily be recompensable without substantial litigation, if at all"). Accordingly, Brooklyn Lender has demonstrated that it will be irreparably harmed absent a stay pending appeal.

## II. Brooklyn Lender Has a Substantial Likelihood of Success on Appeal.

To satisfy the "likelihood of success" factor, the movant need not convince a court to have serious doubts about the correctness of the decision. *See Goldstein v. Miller*, 488 F. Supp. 156, 172-73 (D. Md. 1980), *aff'd*, 649 F.2d 863 (4th Cir. 1980), *cert. denied sub nom.*, *Goldstein v. Regan*, 454 U.S. 828 (1981). Rather, the movant need only raise substantial questions concerning the correctness of such decision. *St. Johnsbury Trucking Co.*, 185 B.R. at 689 ("likelihood of success" prong satisfied where cases "do not so conclusively establish" the correctness of the decision "as to preclude responsible argument on the point" and movant raised "substantial questions" concerning the correctness of the decision being appealed); *cf. In re Motors Liquidation Co.*, 539 B.R. 676, 685 (Bankr. S.D.N.Y. 2015) (movant need only show some likelihood of success or "sufficiently serious questions going to the merits to make them a fair ground for litigation"). Brooklyn Lender has satisfied this standard.

### A. Brooklyn Lender Is Substantially Likely to Prevail in its Appeal of the Disallowance Order.

For the reasons set forth below and its brief on appeal (Appeal Dkt. No. 5), Brooklyn

Lender is likely to prevail in its appeal of the Disallowance Order based on legal errors and clearly erroneous factual conclusions made in the decision disallowing Brooklyn Lender's claims for default interest on account of the Ownership Defaults and Bankruptcy Defaults.

1.     **The Bankruptcy Court Erred in Determining that the Ownership Defaults Are Not Enforceable Under New York Law.**

The Bankruptcy Court erred in concluding that the terms of the parties' contracts are not enforceable under New York law. New York law recognizes that contracts "negotiated between sophisticated, counseled business people negotiating at arm's length" should be enforced according to their terms—especially "in the context of real property transactions, where commercial certainty is a paramount concern." *Vt. Teddy Bear Co., Inc. v. 538 Madison Realty Co.*, 807 N.E.2d 876 (N.Y. 2004); *see also NML Capital v. Republic of Arg.*, 17 N.Y.3d 250, 262 (2011) ("parties to a loan agreement are free to include provisions directing what will happen in the event of default or acceleration of the debt, supplying specific terms that supersede other provisions in the contract if those events occur").

The Bankruptcy Court found that the parties' contracts are unenforceable ***unless*** the non-monetary defaults alleged by Brooklyn Lender impair the collateral securing the debt or make repayment of the loan less likely. This is not the law. Rather, New York courts recognize that "the interests of certainty and security in real estate transactions forbid [courts]," except in ***rare*** cases involving "fraud, bad faith, or unconscionable conduct," from using their equitable powers to deny enforcement of an acceleration provision. *Graf v. Hope Bldg. Corp*, 171 N.E. 884, 885 (N.Y. 1930); *Fifty States Mgmt. Corp. v. Pioneer Auto Parks, Inc.*, 389 N.E.2d 113, 116 (N.Y. 1979) (court's exercise of equitable powers to circumscribe enforcement of an acceleration provision should occur only in "rare" cases meriting such extraordinary relief).

The facts here do not present a "rare" case in which equity should bar the presumptive enforcement of the terms of a contract. It is not bad faith or unconscionable conduct to purchase a loan with the intent to call a default, nor to seek to enforce the terms of the contract. (Bench Ruling at 17, 19.) Moreover, the Bankruptcy Court determined that the D&W Debtors engaged in fraud, expressly finding that they intentionally misrepresented their ownership to Signature at loan origination, in a continuing effort to "shield [Mr. Wagschal's assets] from [his] creditors, with the two men recognizing that Mr. Wagschal nevertheless would in effect be entitled to most or all of these Debtors' value and would have the major say in their management." (Bench Ruling at 36.) Equity cannot bar the normal enforcement of a contract under these circumstances.

Further, the Bankruptcy Court erred in determining that (i) the Ownership Defaults do not impair the lender's security or ability to be repaid and (ii) the Ownership Defaults are not otherwise material. Public policy considerations demand that the Bankruptcy Court's decision be reversed.

        a.       **The Ownership Defaults Necessarily Impair the Lender's Security and Make Payment of the Loan Less Likely.**

The Bankruptcy Court erred in determining that the Ownership Defaults do not impair the lender's collateral or make repayment of the loan less likely. New York law is clear that the transfer of collateral or control of the collateral securing a loan without the lender's consent (i) necessarily impairs the lender's security and (ii) affects the ability of the lender to be repaid on the loan. *Stith v. Hudson City Sav. Inst.*, 313 N.Y.S.2d 804, 808 (Sup. Ct. 1970); *see also Fidelity Fed. Sav. & Loan Ass'n v. Cuesta*, 458 U.S. 141, 145-46, 170-71 (1982) (transfer of collateral or control of collateral without lender's consent impairs lender's ability to assess whether "the security property is transferred to a person whose ability to repay the loan and properly maintain the property is inadequate"). For this reason, acceleration pursuant to a due-on-sale clause is strictly enforced in New York: it allows the lender to determine who they wish to accept as a

borrower and owner of the security.  1 Mortgages and Mortgage Foreclosure in N.Y. § 28:13 (collecting cases); 1 Bergman on New York Mortgage Foreclosures § 4.11 (2020) ("[I]n New York the enforceability of due-on-sale provisions has always been virtually beyond dispute.").

The Ownership Defaults here should be enforced for the same reason. Mr. Wagschal's 100% ownership interest, and 100% control over the properties as its Managing Member, was not disclosed to Signature. (Bench Ruling at 36-37.)  The D&W Debtors instead informed Signature that *Mr. Strulovitch* owned 99% of the D&W Debtors' ownership interests, and that *Mr. Strulovitch* was the D&W Debtors' Managing Member and controlled the properties serving as the security for the Loan.  (*Id.*)  Because of this misrepresentation, Signature did not have an opportunity to assess to whom it was really lending, who was managing its collateral, whether that person had the experience and ability to care for and maintain the collateral, and the extent to which the beneficial owner of the properties could cover shortfalls in property income— necessarily impairing the collateral and the lender's ability to be repaid on the loan.

### b. The Ownership Representations and Defaults Are Material.

Accurate disclosure of ownership was a material term of the loan.  Signature expressly and repeatedly solicited accurate and complete disclosure of the Debtors' ownership structure.  As part of the loan origination, Signature required each Debtor to:

- provide a certified "Ownership Schedule," a list of "the persons and/or entities that own interests in the Borrower";

- "represent and warrant to the Bank that the information contained in the Ownership Schedule is true, accurate and complete as of the date of this Commitment";

- provide its operating agreements, fifteen days before the Closing Date, to "confirm[] the information contained within the Ownership Schedule";

- execute on the Closing Date, "a certificate in favor of the Bank certifying that the information contained in the Ownership Schedule is true, accurate and complete as of the Closing Date"; and

- "acknowledge that ***the identity of the person with whom the Bank deals is of material importance to it***."

(*See* Appeal Dkt. No. 5 at 16.)  At closing, the Debtors "certif[ied] and warrant[ed] to Signature," "***[i]n order to induce Signature . . . to make a first mortgage loan***," that "the ownership schedule previously submitted to the Bank is true, accurate and complete."  (*See id*. at 17.)

Kenneth Stagnari ("Stagnari"), Signature's corporate representative, confirmed at the August 2020 trial that Signature is "required to know the ownership structure" and "who owns the loan, who the main principals are."  (*See id*.)  Accurate disclosure of ownership was "***very material***" for two reasons.  (*See id*.)  First, Signature was required comply with Office of Foreign Assets Control and Know Your Customer ("KYC") regulations.  (*See id*.)  The failure to accurately disclose ownership "might put a lender at risk" of violating money laundering, Patriot Act, and KYC regulations.  (Bench Ruling at 39.)  Second, the net worth of the borrower's main principals is important to Signature's credit analysis.  (*See* Appeal Dkt. No. 5 at 18.)  Stagnari explained, "***[W]e like to know the financial wherewithal of our clients. We like to know they have experience in real estate investment and real estate management.*** . . . I wouldn't want to give a 10 million-dollar loan to somebody that only owns one property and has a net worth of 5 bucks."  (*Id*.)  For this reason, Signature required the borrower to provide an accurate "personal financial statement so we know who we are dealing with."  (*Id*.)  Indeed, the Debtors certified that such personal financial statement "will be relied upon," and that "[i]t shall be an event of default if anything in this statement turns out to have been false as of the date of this statement."  (*Id*. at 16.)

The Ownership Defaults are not insignificant or technical.  The Bankruptcy Court's finding to the contrary appears to be based on its clearly erroneous factual findings that Signature did not "sufficiently solicit" disclosure of the Debtors' ownership interests or actually rely on such representations.  These factual findings are directly contradicted by the foregoing evidence and are

clearly erroneous. *Metzen v. United States*, 19 F.3d 795, 805–06 (2d Cir. 1994) (trial court committed clear error where its findings were belied by documentary evidence and testimony); *Pfeiffer v. Silver*, 712 F.2d 799, 805 (2d Cir. 1983) (similar).

The Bankruptcy Court's determination also was based on an erroneous application of the law. All of the cases cited by the Bankruptcy Court involved highly technical defaults that are distinguishable from the default here. *Karas v. Wasserman*, 458 N.Y.S.2d 280 (App. Div. 1982) (borrower's failure to furnish to the lender statements or receipts to prove that it had actually complied with the loan's terms); *Blomgren v. Tinton 763 Corp.*, 238 N.Y.S.2d 435, 437–38 (App. Div. 1963) (removal and replacement of refrigerators, stoves, and sinks from the mortgaged premises); *100 Eighth Ave. Corp. v. Morgenstern*, 164 N.Y.S.2d 812, 814 (App. Div. 1957) (borrower's "inadvertent" failure to sign a timely issued and otherwise sufficiently funded debt service check); *Rockaway Park Series Corp. v. Hollis Automotive Corp.*, 135 N.Y.S.2d 588, 589-90 (Sup. Ct. 1954) (housing violations urged as basis for foreclosure had been filed 14 years prior to mortgagor's purchase of premises and mortgagee delayed enforcing mortgage until after violations were removed); *Tunnell Publ'g Co. v. Straus Comm'ns., Inc.*, 565 N.Y.S.2d 572, 574 (App. Div. 1991) (transfer of defendant's business to a substantially similar entity that was structured as a limited partnership, with same principals and same proportion of ownership interests, for tax purposes); *Empire State Bldg. Assocs. v. Trump Empire State Partners*, 667 N.Y.S.2d 31, 33, 35 (App. Div. 1997) (lessee was alleged to have made a hypertechnical misrepresentation to the Department of Buildings concerning whether one of the building's more than 86 floors had a separate air conditioning system).

The technical defaults relied upon by the Court are thus nothing like the defaults at issue here, which involve intentional deceit about the true owners of the collateral. *Compare with Zona*

*Inc. v. Soho Centrale,* 704 N.Y.S.2d 38 (App. Div. 2000) (enforcing default for assignment of lease, finding that tenant's misrepresentation that Sagar owned 90 percent of its outstanding stock was "obviously material and central to the lease agreement" given the landlord's assertion to that effect and that tenant defaulted by assigning, without prior written consent, 25% of the capital stock of tenant); *MBIA Ins. Corp. v. Credit Suisse Sec. LLC*, 2020 WL 7041787 (N.Y. Cty. Sup. Ct. 2020) ("A post-closing corrective disclosure of a material misrepresentation generally does not make the loan less risky. . . . Informing the originator [of the true facts] after the loan has closed . . . does nothing to alleviate the loan's higher risk.").

The Bankruptcy Court's ruling that a lender cannot accelerate a loan, or recover default interest, based on a default for a material misrepresentation, despite the plain terms of the contract, would erode the stability of scores of credit agreements that contain such a provision. Without commercial certainty that such provisions will be enforced by the courts, they have no practical utility, leaving the market with no means of ensuring that borrowers make true, accurate, and complete representations at loan origination or in statements furnished under a loan. That is not, and cannot be, the law. Indeed, courts applying New York law enforce default provisions substantially similar to the default provision at issue here. *Chase Manhattan Bank v. Motorola, Inc.*, 184 F. Supp. 2d 384 (S.D.N.Y. 2002) (enforcing default, and requiring borrower's performance of a $300 million guarantee obligation, where borrower made misrepresentation in a certificate issued in connection with a credit agreement); *In re Fontainebleau Las Vegas Holdings, LLC*, 417 B.R. 651, 665-66 (S.D. Fla. 2009) (provision that an event of default occurred if "any representation or warranty . . . shall prove to have been inaccurate in any material respect" was enforceable, such that the lender would have been entitled to refuse to disburse funds on a revolving loan agreement).

## 2. The Bankruptcy Court Erred In Disallowing Brooklyn Lender's Claims for Default Interest on Account of the Bankruptcy Defaults.

The Bankruptcy Court erred in determining that Brooklyn Lender is precluded from recovering default interest where the Debtors were current on their payments and the only default was the filing of the Chapter 11 petitions.[5] The law in this Circuit is clear that payment of post-petition default interest, where provided for under the agreement under which the claim arose, is required where debtors are solvent and such payment would not harm any unsecured creditors. 11 U.S.C. § 506(b); *Ruskin v. Griffiths*, 269 F.2d 827, 832 (2d Cir. 1959) (reversing bankruptcy court where it refused to enforce payment of interest at the default rate for a bankruptcy default); *In re Gen. Growth Props.*, 451 B.R. 323, 327 (Bankr. S.D.N.Y. 2011) (requiring payment of default interest although debtors were current on payment, because "before there is a return to equity in a reorganization case, creditors should receive interest as compensation for the delay of a bankruptcy process"). This is so even where debtors are current on payment and the only default is the filing of the Chapter 11 petitions. *Id.*

Here, the Debtors are solvent. The Bankruptcy Court found that "most other creditors, besides Brooklyn Lender, appear to be insiders," and that the Israeli Investors, who asserted the largest claim, "have not sought to reduce Brooklyn Lender's claim." (Bench Ruling at 43-44.) Payment of default interest for the Bankruptcy Defaults thus would not harm the other creditors. At most it would reduce the recovery to the Debtors' equity holders, which is not a basis for denying default interest. *See In re 785 Partners LLC*, 470 B.R. 126, 134 (Bankr. S.D.N.Y. 2012) (reducing the default interest payable by a solvent debtor would unfairly grant a windfall to its

---

[5]    The Bankruptcy Court's ruling also incorrectly assumes that the Debtors' only default was the filing of the Chapter 11 petitions. The fact that the Bankruptcy Court denied Brooklyn Lender's right to accelerate the loans and recover default interest on equitable bases does not mean that the Debtors did not default under the plain terms of the parties' agreements.

equity); *In re Sultan Realty, LLC*, 2012 WL 6681845 (Bankr. S.D.N.Y. Dec. 21, 2012) (similar).

Each of the cases cited by the Bankruptcy Court are inapposite because they involved insolvent debtors. *See In re Residential Capital, LLC*, 508 B.R. 851 (Bankr. S.D.N.Y. 2014) (partially denying default interest because debtors were insolvent and payment of default interest would harm other creditors); *In re Vest Assocs.*, 217 B.R. 696, 703–04 (Bankr. S.D.N.Y. 1998) (denying default interest because the Debtors were likely insolvent (without prejudice to the creditor renewing its claim for default interest in the event debtors were solvent)); *In re N.W. Airlines Corp.*, 2007 WL 3376895, at *6 (Bankr. S.D.N.Y. Nov. 9, 2007) (denying default interest because there was "no question as to the insolvency of the Debtors and the fact that the recovery of other creditors would be diminished by a grant of default interest"); *In re Bownetree, LLC*, 2009 WL 2226107, *4 (Bankr. E.D.N.Y. July 24, 2009) (denying default interest because debtors were insolvent and payment of default interest would have reduced recovery to unsecured creditors).

**B.      Brooklyn Lender Is Substantially Likely to Prevail in its Appeal of the D&W Confirmation Order.**

Brooklyn Lender is also likely to prevail on the D&W Confirmation Order Appeal because the Bankruptcy Court (i) improperly reduced Brooklyn Lender's legal fees by more than 85% and (ii) assumed the feasibility of the D&W Plan despite lacking any evidentiary support.

**1.      The Bankruptcy Court Erred In Reducing Brooklyn Lender's Legal Fees By More Than 85%.**

First, the Bankruptcy Court's decision to decline to award to Brooklyn Lender a substantial portion of its legal fees (awarding approximately $117,000.00 of fees and expenses out of $507,176.65 in fees and expenses, plus $275,605.87 in interest on such amounts), or an over 85% reduction. (*Compare* Ex. D *with* Ex. H.) This is contrary to law.

Section 506(b) of the Bankruptcy Code allows for the payment of "reasonable fees, costs, or charges provided for under the agreement or State statute under which such claim arose" up to

the value of its equity cushion to the extent that the creditor is oversecured. 11 U.S.C. § 506(b); *Residential Capital, LLC*, 508 B.R. at 856. For its fees to be recoverable under Section 506(b), a creditor must establish: (1) that it is over-secured; (2) that the underlying agreement provides for such fees and costs; and (3) that the claim for fees and costs is reasonable. *In re Mills*, 77 B.R. 413, 418 (Bankr. S.D.N.Y. 1987) (citations omitted). Additionally, plans that propose to cure defaults, including ones that propose payment in full of a creditor's claims such as the D&W Plan, must pay interest at the default rate where state law and the underlying agreements allow for such interest. *See* 11 U.S.C. § 1123(d).

In denying the vast majority of Brooklyn Lender's legal fees and expenses, and interest thereon, the Bankruptcy Court's decision was at odds with settled law applying Section 506(b). The plain language of the Mortgages allows for legal fees:

> The cost and expense [to appear in, defend or bring any action or proceeding to protect Mortgagor's interests in the Mortgaged Property or to foreclose the Mortgage or collect the Debt] (including attorneys' fees), with interest as provided in this paragraph, shall be due upon demand from the Mortgagee to the Mortgagor. All such costs and expenses incurred by the Mortgagee in remedying such default or in appearing in, defending or bringing any such action or proceeding shall be paid with interest at the Default Rate for the period after notice from the Mortgagee that such cost or expense was incurred to the date of payment to the Mortgagee. All such costs and expenses incurred by the Mortgagee pursuant to the terms hereof, with interest, shall be deemed to be secured by the Mortgage.

(*See, e.g.*, Ex. F, ¶ 19.)

The D&W Debtors never contested that Brooklyn Lender was over-secured. Nor was it contested that the Mortgages and New York law allow for the payment of legal fees and expenses. Instead, the Bankruptcy Court reached erroneous findings of fact and conclusions of law regarding the reasonableness of Brooklyn Lender's fees and expenses. In particular, it denied legal fees incurred, *inter alia*, in connection with Brooklyn Lender's protection of interests in the Properties

in prosecuting defaults arising from the D&W Debtors' fraudulent misrepresentations to Signature (which the Bankruptcy Court found indeed were made by the Debtors as a matter of fact). Additionally, no fees were awarded for Brooklyn Lender's work in contesting confirmation, when the decision to deny the vast majority of legal fees and expenses and interest thereon in the D&W Confirmation Order threatens to severely impair Brooklyn Lender's interest in the Properties by diminishing the value of the Brooklyn Lender Secured Claims.

> ## 2. The Bankruptcy Court Erred In Approving A Plan That Assumes Feasibility Without Evidentiary Support.

In considering whether to confirm a plan, courts have "an affirmative obligation to scrutinize the plan and determine whether it is feasible" pursuant to Section 1129(a)(11) of the Bankruptcy Code. *In re Young Broad. Inc.*, 430 B.R. 99, 128 (Bankr. S.D.N.Y. 2010). A court may confirm a plan only if "[c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization . . . unless such liquidation or reorganization is proposed in the plan." 11 U.S.C. § 1129(a)(11). Courts must make an "independent determination as to whether the [p]lan is workable and has a reasonable likelihood of success." *See In re Woodmere Invs. Ltd. P'ship*, 178 B.R. 346, 361 (Bankr. S.D.N.Y. 1995); *see also In re Drexel Burnham Lambert Grp. Inc.*, 138 B.R. 723, 762 (Bankr. S.D.N.Y. 1992); *In re 8315 Fourth Ave. Corp.*, 172 B.R. 725, 734 (Bankr. E.D.N.Y. 1994).

Here, the Bankruptcy Court made the incorrect decision that the D&W Plan was feasible based on assumptions without support in the evidentiary record. Notwithstanding that Bunk Williamsburg filed a proof of claim for over $783,933.04 (*see* Ex. I) and the D&W Plan's own requirement to establish a Disputed Claim Reserve to fund such amount (*see* Ex. A at 4-5), the Bankruptcy Court determined, without evidentiary support, that the parties would agree upon an resolution that would not impair the feasibility of the D&W Plan.

The D&W Plan has a $350,000 reserve for Brooklyn Lender's legal fees (*see* Ex. J), at least $127,000 of which will be expended based on the Bankruptcy Court's ruling at the Confirmation Hearing (*see* Ex. D). An additional amount of at least $224,000 from the $350,000 reserve is to be set aside in the Disputed Claim Reserve pending determination by the Bankruptcy Court of a dispute between the Debtors and Brooklyn Lender over the allocation of funds that were maintained in escrow by Signature when Brooklyn Lender acquired the loan. (*See* Ex. D.) Thus, there are no funds from the $350,000 reserve available to reserve for Bunk Williamsburg's claim.

Moreover, although the D&W Plan contemplates a $1,000,000 escrow funded by a cash contribution from certain interest holders, at least $665,546.21 of that money is required for one of the Debtors' other plans. (*See* Ex. K.) Thus, a maximum of $334,453.79 is available to reserve for Bunk Williamsburg's claims. The D&W Debtors are thus short by $449,479.25, and are not able to fund their obligations on the Effective Date, further to the detriment of Brooklyn Lender.

## III. Any Harm to Debtors Will Be Mitigated By Brooklyn Lender's Waiver of Default Interest and Offer of Alternative Financing.

A stay will not cause substantial injury to the Debtors or any other party. Brooklyn Lender has agreed to waive default interest from June 30, 2021, the date represented as the closing date on the Maguire Exit Facility, through the date that the Pending Appeals become final orders, if a stay is granted pending adjudication of the Pending Appeals. During the interim period, the D&W Debtors will pay contract rate interest of 3.625%, on substantially less onerous terms than the Maguire Exit Financing Facility. Additionally, Brooklyn Lender will provide a $400,000 bond to cover costs to administer the Chapter 11 cases pending appeal (U.S. Trustee fees and the D&W Debtors' professional fees) and increased amounts owed on Class 1 Claims for existing violations.[6]

---

[6] The D&W Debtors' administrative costs to date total $237,998.47 for a period covering more than two years. Brooklyn Lender therefore believes that amount, plus a $162,001.53 buffer,

Moreover, given Maguire's continued interest, since June 2019, in offering exit financing to the Debtors and its repeated extensions of the outside closing date, the Debtors face little risk that they will lose the financing during a brief stay while the appeals are pending.[7] Nevertheless, Brooklyn Lender further commits to provide replacement exit financing, on better terms than Maguire, in the event Maguire becomes unwilling to lend. (*See* Ex. E.)[8]

Brooklyn Lender's offer to waive default interest, and its commitment to provide backstop exit financing, presents "other security" in lieu of a bond, in accordance with Bankruptcy Rule 8007(c). *See, e.g., Petroleos de Venezuela S.A. v. MUFG Union Bank, N.A.,* 2020 WL 7711522, at *2 (S.D.N.Y. Dec. 29, 2020) ("The Pledge Agreement suffices to satisfy the 'other security' requirement of Rule 62(b), as it assures that the Pledged Shares will be maintained in their current form for the duration of the appeal."); *Teachers Ins. and Annuity Ass'n of Am. v. Ormesa Geothermal*, 1991 WL 254573, at *6 (pledge of defendants' "partnership interests as security").

Accordingly, there is little to no risk of harm to the D&W Debtors.[9] The risk of irreparable injury to Brooklyn Lender, on the other hand, is great, including the potential loss of its appellate

will be sufficient to cover the administrative costs and increases to Class 1 Claim amounts during the pendency of the appeal (which Brooklyn Lender believes will be no more than six months).

[7] Indeed, the Debtors' representative, David Goldwasser, testified that Maguire has been willing to make the loan for "four-year[s] plus." (*See* Ex. L at 138:23-139:05.)

[8] Brooklyn Lender has amended the Commitment Letter since submitting it to the Bankruptcy Court to address the Bankruptcy Court's comments and further benefit the D&W Debtors. Brooklyn Lender notes, however, that consistent with the Bankruptcy Court's animus towards it, the Bankruptcy Court took no issue with these exact same terms when offered by Maguire, yet was harshly critical of them when offered by Brooklyn Lender.

[9] Both the Maguire and Brooklyn Lender exit financing would be bridge financing that the D&W Debtors intend to then refinance. At the hearing on Brooklyn Lender's stay motion, the Bankruptcy Court noted that the D&W Debtors face future harm in the form of higher interest rates for permanent financing. The Bankruptcy Court's statement concerning interest rates is entirely speculative. There is no evidence that interest rates 1.5 years from today will be any higher than interest rates 1 year from today.

rights.  (*See supra* Section I).  The balance of harms thus favors granting a stay pending appeal.

## IV.    __The Public Interest Favors the Issuance of a Stay.__

The public interest favors the issuance of a stay.  "The public interest lies in a correct application" of the law.  *See Americans United for Separation of Church & State v. City of Grand Rapids*, 922 F.2d 303, 306 (6th Cir. 1990).  New York law recognizes that contracts should be enforced according to their terms.  (*See supra* Section I.A.i.)  Moreover, absent an award of a reasonable level of legal fees and expenses, oversecured creditors will be chilled from purchasing distressed loans, distorting the market.  *See 785 Partners*, 470 B.R. at 132.  Similarly, not allowing the Pending Appeals to move forward will threaten the rights of oversecured creditors to obtain the benefit of the bargain they negotiated when purchasing distressed debt and will have detrimental effects on the market, ultimately cutting off credit to high-risk borrowers.

## REQUEST FOR EXPEDITED BRIEFING SCHEDULE

Pursuant to Rule 8013(a)(2)(B) and (d), Brooklyn Lender respectfully moves the Court to expedite the D&W Confirmation Order Appeal.  As set forth above and in the accompanying affidavit, the D&W Plan will be consummated on or around June 24, 2021, when the 14-day stay provided by the D&W Confirmation Order expires.  Brooklyn Lender is prepared to file its opening brief within 14 days of the Bankruptcy Court's transfer of the record on appeal.  Brooklyn Lender requests that the Court order that any response brief be filed 14 days later, and any reply brief 7 days after that.  Courts routinely grant motions to expedite in such circumstances.  *Adelphia*, 361 B.R. at 369.

## CONCLUSION

Based on the foregoing, Brooklyn Lender respectfully requests that the Court enter an order staying the D&W Confirmation Order pending appeal of the Disallowance Order and the D&W Confirmation Order and granting such other and further relief as is just and equitable.

Dated: June 15, 2021
New York, New York

KASOWITZ BENSON TORRES LLP


By: /s/ Jennifer S. Recine
David S. Rosner
Jennifer S. Recine
Matthew B. Stein
1633 Broadway
New York, New York 10019
Tel: (212) 506-1700
Fax: (212) 506-1800

*Counsel for Brooklyn Lender LLC*