UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>53 STANHOPE LLC, *et al*,[1]<br><br>Debtors. | Chapter 11<br>Case No: 19-23013 (RDD)<br>Jointly Administered |
| BROOKLYN LENDER LLC,<br><br>Appellant,<br><br>-v-<br><br>D&W Real Estate Spring LLC, *et al.*<br><br>Appellees. | Case no. 7: 21-cv-5177-UA |


### DEBTORS' OPPOSITION TO BROOKLYN LENDER'S EMERGENCY MOTION FOR A STAY OF THE D&W CONFIRMATION ORDER PENDING APPEAL OF THE DISALLOWANCE ORDER AND THE D&W CONFIRMATION ORDER AND FOR AN EXPEDITED BRIEFING SCHEDULE

---

[1] The Debtors are as follows: 53 Stanhope LLC; 55 Stanhope LLC; 119 Rogers LLC; 127 Rogers LLC ; 325 Franklin LLC ; 618 Lafayette LLC; C & YSW, LLC ; Natzliach LLC ; 92 South 4th St LLC ; 834 Metropolitan Avenue LLC ; 1125-1133 Greene Ave LLC ; APC Holding 1 LLC ; D&W Real Estate Spring LLC ; Meserole and Lorimer  LLC ; 106 Kingston  LLC ; Eighteen Homes LLC ; 1213 Jefferson LLC ; 167 Hart LLC.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................II

PRELIMINARY STATEMENT ..................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND......................................................... 3

ARGUMENT ............................................................................................................. 13

   I.   STANDARD OF REVIEW ON MOTION FOR STAY PENDING APPEAL ........................ 13

   II.   BROOKLYN LENDER FAILS TO ESTABLISH IRREPARABLE INJURY AS REQUIRED ... 14

      A.   Mootness Alone Is Insufficient To Justify A Stay ........................................... 14

      B.   Harm Or Risk To Non-Movant Is Substantial ................................................. 17

   III.   THE RELIEF PROPOSED BY BROOKLYN LENDER IN LIEU OF A BOND IS INSUFFICIENT ............................................................................................... 18

   IV.   BROOKLYN LENDER'S APPEAL IS UNLIKELY TO BE SUCCESSFUL ON THE MERITS ......................................................................................................... 22

      A.   Brooklyn Lender's Request For Additional Legal Fees .................................. 23

      B.   Brooklyn Lender's Appeal On The Disallowance Order ................................ 28

CONCLUSION.......................................................................................................... 47

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Berman v. Blooming Farms Joint Venture*,
    50 A.D.2d 558 (2d Dep't 1975) ............................................................. 39

*Blomgren v. Tinton 763 Corp.*,
    18 A.D.2d 979 (1st Dep't 1963) ........................................................... 31

*Blue Citi LLC v. 5Barz Int'l Inc.,*
    No. 16-CV-9027 (VEC), 2019 WL 10890126 (S.D.N.Y. Feb. 6, 2019) ................................ 20

*Brown v. AVECMO Inv. Corp.*,
    603 F.2d 1367 (9th Cir. 1979) ............................................................. 40

*Caspert v. Anderson Apartments*,
    94 N.Y.S.2d 521 (Sup. Ct. 1949) .......................................................... 31

*Citicorp Trust Bank, FSB v. Vidaurre*,
    155 A.D.3d 934, 65 N.Y.S.3d 237 (2d Dep't 2017) ........................................ 24, 30

*Citicorp Trust Bank, FSB*,
    155 A.D.3d 934, 65 N.Y.S.3d 237 (2d Dep't 2017) ........................................... 23

*Consolidated Capital Properties, II, LTD. v. National Bank of North America*,
    420 So.2d 618 (Fla. 5th DCA 1982) ....................................................... 41

*Dale v. Industrial Ceramics, Inc.*,
    150 Misc.2d 935, 571 N.Y.S.2d 185 (Sup. Ct., N.Y. Cty. 1991) .............................. 29

*Daniel Perla Assocs. LP v. ZLD Realty LLC*,
    277 A.D.2d 115 (1st Dep't 2000) .......................................................... 27

*Dayan v. York*,
    51 A.D.3d 964, 859 N.Y.S.2d 673 (2d Dep't 2008), *lv. to appeal denied*, 12 N.Y.3d 839, 881
    N.Y.S.2d 13 (2009) ...................................................................... 30

*Destiny USA Holdings, LLC v. Citigroup Global Mkts. Realty Corp.*,
    24 Misc.3d 1222(A), 897 N.Y.S.2d 669 (Sup. Ct., Ond. Cty.), *aff'd in part and modified in
    part*, 69 A.D.3d 212 (4th Dep't 2009) ..................................................... 29

*Deutsche Bank Nat'l Trust Co. v. Morgan Stanley Mortgage Capital Holdings LLC*,
    289 F. Supp.3d 484 (S.D.N.Y. 2018) ...................................................... 34

*European American Bank v. Harper*,
    163 A.D.2d 458 (2d Dep't 1990) .......................................................... 31

*Fed. Home Loan Mortg. Corp. v. Bronx New Dawn Renaissance VII, L.P.*,
No. 93 CIV. 7970 (CSH), 1995 WL 412399 (S.D.N.Y. July 11, 1995) ................................. 41

*Fifty States Management Corp. v. Pioneer Auto Parks, Inc.*,
46 N.Y.2d 573 (1979) ................................................................................................ 31

*Ford v. Reynolds*,
316 F.3d 351 (2d Cir.2003) ........................................................................................ 16

*Frank Felix Assoc. v Austin Drugs*, Docket
No. 96-7604, 1997 U.S. App. LEXIS 19795 (2d Cir. Apr. 10, 1997) ..................................... 26

*GKK 2 Herald LLC v. City of New York Tax Appeals Tribunal*,
154 A.D.3d 213, 63 N.Y.S.3d 20 (1st Dep't 2017) ................................................. 32

*Grace v Nappa*,
46 N.Y.2d 560 (1979) ................................................................................................ 26

*Graf v. Hope Building Corp.*,
254 N.Y. 1 (1930) ...................................................................................................... 31

*Holm v. First Unum Life Ins. Co.*,
7 F. App'x 40 (2d Cir. 2001) ................................................................................ 38, 39

*Home Savings Bank of Upstate New York v. Baer Properties, Ltd.*,
92 A.D.2d 98 (3d Dep't 1983) .............................................................................. 36, 37

*Household Fin. Realty Corp. of NY v Dunlap*,
15 Misc. 3d 659 (Sup Ct. N.Y. Cty. 2007) ......................................................... 25, 29

*In re 1111 Myrtle Ave. Grp., LLC*,
598 B.R. 729 (Bankr. S.D.N.Y. 2019) ........................................................................ 45

*In re 1567 Broadway Ownership Assocs.*,
202 B.R. 549 (Bankr.S.D.N.Y. 1996) ......................................................................... 14

*In re 785 Partners LLC*,
470 B.R. 126 (Bankr. S.D.N.Y. 2012) ........................................................................ 46

*In re Adelphia Commc'ns Corp.*,
361 B.R. 337 (Bankr.S.D.N.Y. 2007) .................................................................... 15, 19

*In re Bownetree, LLC*,
2009 WL 2226107 (Bankr. E.D.N.Y. 2009) ............................................................... 44

*In re Calpine Corp.*,
No. 05-60200, 2008 WL 207841 (Bankr. S.D.N.Y. Jan. 24, 2008) ......................... 20

*In re Canal Asphalt, Inc.*,
2017 WL 1956849 (Bankr. S.D.N.Y. 2017) ........................................................................ 28

*In re Charter Communications, Inc.*,
691 F3d 476 (2d Cir 2012) ............................................................................................... 16

*In re DJK Residential, LLC*,
No. 08-10375 (JMP), 2008 WL 650389 (S.D.N.Y. Mar. 7, 2008) .................................. 15, 19

*In re Downtown Athletic Club of New York City, Inc.*,
1998 WL 898226 (Bankr. S.D.N.Y. Dec. 21, 1998) ......................................................... 41

*In re Gen. Growth Properties, Inc.*,
451 B.R. 323 (Bankr. S.D.N.Y. 2011) ...................................................................... 31, 45, 46

*In re Gen. Growth Props.*,
409 B.R. 43 (Bankr. S.D.N.Y. 2009) ............................................................................... 21

*In re Gen. Motors Corp.*,
409 BR 24 (Bankr S.D.N.Y.2009) ........................................................................ 13, 14, 15, 23

*In re General Growth Props., Inc.*,
451 B.R. 323 (Bankr. S.D.N.Y. 2011) .............................................................................. 43

*In re Glazier Group, Inc.*,
2013 WL 1856305 (Bankr. S.D.N.Y. 2013) ................................................................ 27, 28

*In re Hawker Beechcraft, Inc.*,
486 B.R. 264 (Bankr. S.D.N.Y. 2013) .............................................................................. 34

*In re Kalian*,
178 B.R. 308 (Bankr. D.R.I. 1995) ................................................................................. 44

*In re Marfin Ready Afix Corp.*,
220 B.R. 148 (Bankr. E.D.N.Y. 1998) ............................................................................. 32

*In re Milham*,
141 F.3d 42 (2d Cir 1998) ............................................................................................... 44

*In re Moshe*,
567 B.R. 438 (Bankr. E.D.N.Y. 2017) ......................................................................... 45, 46

*In re Motors Liquidation Co.*,
539 B.R. 676 (Bankr. S.D.N.Y. 2015) .............................................................................. 19

*In re Northwest Airlines, Corp.*,
2007 WL 3376895 (Bankr. S.D.N.Y. 2007) .............................................................. 32, 37, 38

iv

*In re Overmyer,*
    53 B.R. 952 (Bankr.S.D.N.Y.1985) ................................................................. 13

*In re P. G. Realty Co.,*
    220 B.R. 773 (Bankr. E.D.N.Y. 1998) ............................................................ 32

*In re PCH Assocs.,*
    122 B.R. 181 (Bankr. S.D.N.Y. 1990) ............................................................ 27

*In re Residential Capital, LLC,*
    508 B.R. 851 (S.D.N.Y Bankr. 2014) ............................................................. 30

*In re Sabine Oil & Gas Corp.,*
    551 BR 132 (Bankr.S.D.N.Y. 2016) ............................................................... 16

*In re Sabine Oil & Gas Corp.,*
    No. 16-CV-2561 (JGK), 2016 WL 4203551 (Bankr.S.D.N.Y. Aug. 9, 2016) ................. 20, 21

*In re Sabine Oil & Gas Corp.,*
    No. 16-CV-2561 (JGK), 2016 WL 4203551 (Bankr.S.D.N.Y. Aug. 9, 2016) ........................ 14

*In re St. Johnsbury Trucking Co., Inc.,*
    185 BR 687 (Bankr.S.D.N.Y.1995) ........................................................... 15, 16

*In re Turner,*
    207 B.R. 373 (2d Cir. BAP 1997) ................................................................. 14

*In re Vest Assoc.,*
    217 B.R. 696 (Bankr. S.D.N.Y. 1998) ........................................................ 32, 43

*In re Vest Assoc.,*
    217 BR 696 (Bankr. S.D.N.Y. 1998) ............................................................. 23

*In re White,*
    88 B.R. 498 (Bankr. D.Mass. 1988) ............................................................... 44

*In re Wonder Corp. of America,*
    72 B.R. 580 (Bankr. D.Conn. 1987), *affirmed* 82 B.R. 186 (D.Conn. 1988) ........................ 27

*In re Woods Auto Gallery, Inc.,*
    379 B.R. 875 (Bankr. W.D.Mo. 2007) ............................................................ 27

*In Rockaway Park Series Corp. v. Hollis Automotive Corp.,*
    135 N.Y.S.2d 588 (Sup. Ct. 1954) ................................................................. 31

*ING Real Estate* Finance *(USA) LLC v. Park Ave. Hotel Acquisition LLC,*
    26 Misc.3d 1226(A) (Sup. Ct. 2010) .............................................................. 31

*J.N.A. Realty Corp. v. Cross Bay Chelsea, Inc.*,
    42 N.Y.2d 392 (1977) ............................................................................ 30, 31

*Johnson Fed. Home Loan Mortg. Corp.*,
    No. 4:13cv163, 2013 U.S. Dist. Lexis 97713 (W.D. Va. 2013) ............................... 26

*Karabu v. Pension Benefit Guaranty Corp.*,
    No. 96 Civ. 4960 (BSJ), 1997 WL 759462 (S.D.N.Y. 1997) ................................. 40

*Katz v. Berisford Int'l PLC,* No.
    96 CIV. 8695 (JGK), 2000 WL 959721 (S.D.N.Y. July 10, 2000) ........................... 34

*Leevson v. Aqualife USA Inc.*,
    No. 14CIV6905JBWVMS, 2017 WL 6541766 (E.D.N.Y. Dec. 8, 2017), *report and
    recommendation adopted,* No. 14-CV-6905, 2017 WL 6550683 (E.D.N.Y. Dec. 21, 2017) .. 19

*Loan Am. Fin. Corp. v. Talboom,*
    163 Misc. 2d 199, 620 N.Y.S.2d 221 (Sup. Ct. Suffolk Cty. 1994) ........................ 34

*Luxonomy Cars, Inc. v. Citibank, N.A.*,
    65 A.D.2d 549, 408 N.Y.S.2d 951 (2d Dep't 1978) .......................................... 29

*Mayo v Wells Fargo Bank, N.A.*,
    2015 U.S. Dist. LEXIS 26383 (E.D Va. Mar. 4, 2015) ...................................... 26

*Med. Soc'y of the State of N.Y. v. UnitedHealth Grp. Inc.*,
    332 F.R.D. 138 (S.D.N.Y. 2019) ........................................................... 38

*Mills v. Nashua Federal Savings and Loan Assoc.*,
    121 N.H. 722 (S. Ct. New Hampshire 1981) .................................................. 41

*Net2Globe Intl. v Time Warner Telecom of NY*,
    273 F Supp. 2d 436 (S.D.N.Y 2003) ........................................................ 27

*Neuro-Rehab Associates, Inc. v. AMRESCO Commercial Finance, L.L.C.*,
    No. CIVA 05–12338–GAO, 2006 WL 1704258 (D. Mass. June 19, 2006) .......................... 40

*Rocky Aspen Management 204 LLC v. Hanford Holdings LLC*,
    16 Civ. 4270 (VM), 2018 WL 3471809 (S.D.N.Y. June 28, 2018), *subsequent determination*,
    358 F.Supp.3d 279 (S.D.N.Y. Jan. 30, 2019), *aff'd in part, vacated in part*, 2019 WL 1447260
    (S.D.N.Y., Mar. 8, 2019) .................................................................. 29

*Ruskin v. Griffiths*,
    269 F.2d 827 (2d Cir. 1959) ............................................................... 46

*Seidman v Indus. Recycling Props., Inc.*,
    106 A.D.3d 983 (2d Dep't 2013) ......................................................... 26, 29

*Times Mirror Mags., Inc. v Field & Stream Licenses Co.*,
103 F. Supp. 2d 711 (S.D.N.Y. 2000) .................................................................. 26

*Tunnell Publishing Co. v. Straus Communications, Inc.*,
169 A.D.2d 1031 (3d Dep't 1991) ................................................................ 35, 36

*United States v. Ron Pair Enterprises, Inc.*,
489 U.S. 235, 109 S. Ct. 1026 (1989) ............................................................ 42, 43

*Veleron Holding, B.V. v. Morgan Stanley*,
117 F. Supp. 3d 404, 430 (S.D.N.Y. 2015) ........................................................ 34

*W.F.M. Restaurant, Inc. v. Austern*,
35 N.Y.2d 610 (1974) .................................................................................... 31

*Yelencsics v. Comm'r of Internal Revenue*,
74 T.C. 1513 (1980), *acq. recommended by RE: ANTHONY YELENCSICS AND NORMA
YELENCSICS, ET AL V. COMMISSIONER, AOD-1981-41* (IRS AOD Jan. 30, 1981), *and
acq, IRS Announcement Relating to: Rawson, Yelencsics* (IRS ACQ Dec. 31, 1981) ............. 33

## Statutes

11 U.S.C. 101 ...................................................................................................... 3

Fed. R. Bankr. P. 506(b) ................................................................................ 42, 44

Fed. R. Bankr. P. 8007(b) ...................................................................................... 13

## Other Authorities

Bergman, B., *Strict Acceleration in New York Mortgage Foreclosure-Has the Doctrine Eroded?*,
Pace Law Review, 480 (June 1988) ...................................................................... 25

Debtors[2] by and through their undersigned counsel, respectfully submit this memorandum in opposition to Brooklyn Lender's Emergency Motion for (i) a stay of the D&W Confirmation Order pending appeal of the disallowance Order and the D&W Confirmation Order and (ii) an expedited Briefing schedule dated and filed on June 15, 2021.

## PRELIMINARY STATEMENT

By this motion, Brooklyn Lender seeks extraordinary relief without offering any real security to debtors D&W Real Estate Spring LLC and Meserole and Lorimer LLC (collectively "D&W"). D&W would otherwise be able to emerge from a four year long legal saga that exists only because Brooklyn Lender acted as a predatory lender who bought up debt that was in good standing with a commercial bank and immediately declared non-existent material defaults that have left D&W in limbo since 2017 while being forced to devote vast sums of time and money to defend itself. To be clear, the only material default found as to D&W by the Bankruptcy Court was a maturity default which only occurred in June 2020, more than a year after its bankruptcy filing and months after the date for the original confirmation hearing as to all Debtors. Despite essentially backing into a default and despite no other defaults warranting acceleration having been found, Brooklyn Lender asked for nearly $800,000 in legal fees on the D&W Confirmation Plan, in addition to hundreds of thousands of dollars in default interest that it is already collecting.

The Bankruptcy Court correctly disallowed the vast majority of those legal fees, as counsel for Brooklyn Lender did not spend appreciable time in the tens of thousands of hours it expended prosecuting this case on any legal work related to maturity defaults. The ability to award legal

---

[2] The Debtors are 53 Stanhope LLC, 55 Stanhope LLC, 119 Rogers LLC, 127 Rogers LLC, 325 Franklin LLC, 618 Lafayette LLC, C & YSW, LLC, Natzliach LLC, 92 South 4th St LLC, 834 Metropolitan Avenue LLC, 1125-1133 Greene Ave LLC, APC Holding 1 LLC, D&W Real Estate Spring LLC, Meserole and Lorimer LLC, 106 Kingston LLC, Eighteen Homes LLC, 1213 Jefferson LLC, and 167 Hart LLC (each a "Debtor", and collectively referred to herein as the "Debtors").

1

fees was within the sound discretion of the Bankruptcy Court, who would have been well within its rights to award nothing at all given Brooklyn Lender's predatory behavior in this case.

After conclusion of the confirmation hearing for D&W, at which time the Court confirmed D&W's plan, Brooklyn Lender made an oral application for a stay. The Bankruptcy Court advised Brooklyn Lender that it should secure a significant undertaking, in excess of $15 million, in order to provide adequate security to D&W in the likely event it is unable to succeed on appeal. The Bankruptcy Court reiterated that position at an appearance the following day, when the Court adjourned the original application as premature given that no order had been entered at the time. Yet, Brooklyn Lender procured no undertaking, offering essentially no security, only a waiver of default interest which it would not be entitled to if the D&W Confirmation Plan was to go through, and similar financing to what D&W has already procured. This is woefully insufficient.

Brooklyn Lender is essentially asking the Court to force a debtor to remain in bankruptcy for an indeterminate period of time while its appeal is decided, which will impair D&W's finances, its operations and all of its business relationships. In the interim, D&W would be forced to expend valuable resources to pay, *inter alia*, fees charged by the U.S. Trustee, insurance fees, administrative costs, and legal fees for what one could reasonably presume would be necessary given Brooklyn Lender's litigious nature (as it has already allegedly run up at least $8 million in attorney's fees). This would also have the effect of forcing a debtor, who is primed and ready to emerge from Chapter 11, to stay in business with a predatory lender whose business model is to buy debt, including debt in good standing with its lender as was the case here, and declare borrowers in default based on non-material defaults, forcing those entities to incur large legal fees to contest these defaults.

Allowing a stay here essentially rewards Brooklyn Lender for its predatory conduct. D&W is forced to remain under Brooklyn Lender's thumb for as long as it takes to decide its appeal. And in the event Brooklyn Lender is unsuccessful on its appeal, then it is likely that D&W would be forced to accept the financing that Brooklyn Lender is offering as its "security," meaning that D&W would be forced to stay into business for an additional period with the same predatory lender that has disrupted its business and cost D&W millions of dollars to defend itself over the last four years.

The only party that will be injured if a stay is entered is D&W. Brooklyn Lender's "injury" is purely a monetary one. If it is successful on its appeal, then it could seek to recoup any amounts it is deemed owed through the judicial process, of which it is so intimately aware. On the other hand, D&W will suffer irreparable injury for being forced to stay in bankruptcy and incur all of the costs and fees noted above. Moreover, the exit financing that D&W has secured is in essence a bridge loan, and D&W will seek in the next twelve months to secure alternate financing at a time of historically low interest rates. If D&W is forced to stay in bankruptcy for a year or more, during a time of increased inflation risks and potentially rising interest rates, then it could lose its chance to secure any such low-interest financing.

For the reasons set forth more fully below, there is no legal or factual basis to grant the extraordinary relief that Brooklyn Lender seeks through this motion. Thus, the motion for a stay should be denied.

## FACTUAL AND PROCEDURAL BACKGROUND

The Appellees are Debtors that on December 20, 2018, filed a Chapter 11 petitions under Title 11 of the United States Code, 11 U.S.C. 101 et seq. (the "Bankruptcy Code"), except 167

Hart LLC which filed its petition on May 21, 2019. The Debtors own small apartment buildings scattered in Brooklyn controlled by Chaskiel Strulovitch.

Each of the Debtors took loans from Signature Bank in the form of 14 separate notes and mortgages covering 31 properties dating back to September 2012. The interest rates on the loans ranged from ranged from 3.625% to $4.35%. All of the loans were assigned to Brooklyn Lender LLC ("Brooklyn Lender") on or about May 17, 2017. At that time, each Debtor was current on its payment obligations and no defaults had ever been declared by Signature Bank. The Debtors remained current at the non-default contract rates throughout Brooklyn Lender's subsequent foreclosure actions and the Debtors' consequent bankruptcy filings.

Brooklyn Lender LLC was formed on May 9, 2017, immediately before it acquired the loans, and shortly after it discovered a lawsuit against some of the Debtors and Chaskiel Strulovitch. On April 24, 2017, the Debtors, a number of its affiliates and Mr. Strulovitch, among others, were sued in the United States District Court for the Eastern District of New York (the "Federal Action") by a group of Israeli individuals claiming to have an interest in the properties. In alleging a "Bernie Madoff" type scheme, the Israeli Plaintiffs asserted contract claims, tort claims, equitable claims, and securities law claims. The plaintiffs included limited liability companies ("LLC Plaintiffs") and individual members of those limited liability companies ("Individual Plaintiffs," with the LLC Plaintiffs, the "Plaintiffs") who sued on their own behalf and derivatively on behalf of the LLC Plaintiffs.

Fourteen of the Debtors-Appellees, were named as 'relief defendants': 53 Stanhope LLC, 55 Stanhope LLC, 119 Rogers LLC, 127 Rogers LLC, C & YSW, LLC, Natzliach LLC, 92 South 4th St LLC, 834 Metropolitan Avenue LLC, Greene Ave LLC, APC Holding 1 LLC, D&W Real Estate Spring LLC, Meserole and Lorimer LLC, Eighteen Homes LLC, and 167 Hart LLC

("Debtor Relief Defendants"), although there was no actual claim for an ownership interest in the Debtor Relief Defendants. Notwithstanding, the Plaintiffs asserted constructive trust claims, arguing that some of the money they invested in the other entities may have been diverted to the Debtor Relief Defendants as their basis for including those Defendants. The only direct connection to the Debtors is that the LLC Plaintiffs hold profit sharing interests in four of the Debtors, each of whom was named as an "LLC Defendant": 106 Kingston LLC, 1213 Jefferson LLC, 618 LaFayette LLC and 325 Franklin LLC ("Debtor LLC Defendants").

The Debtor LLC Defendants moved to dismiss the Federal Action and on November 2, 2017, the Court (Amon, J.) granted the motion, dismissed the complaint and vacated the notices of pendency, finding that as to the claims against the LLC Defendants, Plaintiffs were required to arbitrate any claim they may have. No arbitration was commenced until June 2021. Similarly, the Debtor Relief Defendants moved to dismiss arguing, among other things, that the constructive trust claim was merely supported with conclusory statements and no real facts to support allegations of diversion of funds. The District Court dismissed the complaint as against the Debtor Relief Defendants, holding that the Plaintiffs may sue in State Court.

Prior to purchasing the subject loans, Brooklyn Lender discovered the Federal Action and targeted the loans on the Debtors' Properties as potential sources for windfall profits if Brooklyn Lender could accelerate the loans retroactively to the loans' inception. Brooklyn Lender ultimately purchased the subject loans from Signature bank and immediately put each of the 14 loans in default even though each of the loans was current in their monthly principal and interest payments.

The primary subject of the Default and Acceleration letters cited the Federal Action as a basis to declare a default pursuant to Paragraph 18(g) of each respective set of loan documents. The Default letters stated the following:

Please be advised that Lender has been made aware of the certain lawsuit against Guarantor captioned *Jacob Schonberg, et al v. Yechezkel Strulovitch a/k/a Chaskiel Strulovitch, et al*., Case No. 17-cv-02161, currently pending in the United States District Court for the Eastern District of New York, wherein it is alleged, among other things, that [Mr. Stulovitch] misrepresented that he is the sole member of certain limited liability companies in connection with the making of certain mortgage loans. Pursuant to Paragraph 18(g) of the Agreement, the Debt "will become due at the option of the Mortgagee upon any one or more of the following events: (g) if any representation or warranty of the Mortgagor or of any person (a "guarantor") guaranteeing payment of the Debt or any portion thereof or the performance by the Mortgagor of any of the terms of the notes, the Mortgage or this Agreement, made herein or in any such guaranty or in any certificate, report, financial statement or other instrument furnished in connection with the making of the notes, the Mortgage, this Agreement or any such guaranty, shall prove false or misleading in any material respect.

In addition to misrepresentation defaults, Brooklyn Lender also alleged defaults arising from the existence of violations on the Properties, subordinate mortgages on two of the Debtors' Properties and relatively small outstanding amounts due to the City of New York.

However, it was clear from the outset that the most important event of default Brooklyn Lender was seeking was the claimed misrepresentation of ownership triggering what it classified as a Paragraph 18(g) default.  The reason being that Brooklyn Lender was seeking to impose default interest at the rate of 24% back to the date of origination of each of the loans. However, at the time there was no evidence or finding by a Court of any misrepresentation, only an unsubstantiated pleading filed in the Federal Action, which merely claimed a potential misrepresentation with respect to the four Debtor LLC Defendants, not all of the Debtors.

Shortly thereafter, Brooklyn Lender commenced a foreclosure proceeding on each of the 14 loans in Kings County Supreme Court.  After some litigation back and forth, including motions for receivers and motions for summary judgment, which was never decided, the Debtors filed Chapter 11 plans that proposed to pay all creditors in full in cash in the amounts legitimately owed, not the made-up default rate from date of inception.

6

Throughout the foreclosure actions and at the outset of the Bankruptcy actions, Brooklyn Lender had no evidence to support its claimed default and demand for 24% interest from date of origination of the loan. However, after forcing the Debtors into Bankruptcy, Brooklyn Lender was able take advantage of Bankruptcy Rule 2004, which gives creditors the right to broad discovery of a debtor in bankruptcy. That was two years post-acceleration.

The Bankruptcy Court conducted a simultaneous trial on the Plan and the Claim Objection in August 2020.

As expected, the evidence proffered to justify acceleration was unrelated to the Federal Court Action. Brooklyn Lender relied on tax returns that were turned over in discovery during the Bankruptcy case. It has always been the Debtors position that the failure to have support for the default, at the time the default was declared, warranted the denial of the acceleration and the corresponding default interest sought.

In addition to Brooklyn Lender, the Israeli Plaintiffs from the Federal Court Action also objected to the Debtors Plan asserting their identical claims from the Federal Court Action. However, as expected, the Israeli Claimants produced no evidence to support the allegations made in the Federal Court Action, and the Bankruptcy Court found that for Plan confirmation purposes, they had no credible claims. In other words, the primary basis upon which Brooklyn Lender accelerated, filed a foreclosure action and forced the Debtors into bankruptcy was illusory, and it was only after three years of litigation, while the Debtors were in bankruptcy, that Brooklyn Lender discovered an argument to retroactively rationalize the otherwise improper default and acceleration notices.

The Bankruptcy Court ultimately found that there was non-disclosure of beneficial interests, but the Bankruptcy Court also found that it is not clear that the loan applications

sufficiently solicited disclosure of ownership interests, required to justify the acceleration on those grounds. Most importantly, the Bankruptcy Court found that any non-disclosure of ownership was not material to Signature Bank as required to declare a default on that basis.

In seeking default interest for misrepresentations, Brooklyn Lender relied heavily on Personal Financial Statements ("PFS") which were submitted to Signature Bank in association with the loan applications, as requested. That PFS question is ambiguous because it did not ask for the identity of the parties entitled to profit but rather just provided ownership and cash flow. As argued by Debtors, cash flow is not profit as cash flow is cash on hand at a given time which is subject to control of the managing member. Profit, by way of contrast, is the cash left after all expenses have been paid including mortgage payments, taxes, insurance, etc. Mr. Strulovitch was never asked if there were profit-sharing interests in either the PFS or anytime during the loan application process. Furthermore, a paragraph 18(g) default required a material misrepresentation with respect to the borrower or "guarantor of the Debt" as specified in the loan documents. It is undisputed that Mr. Strulovitch did not sign unconditional guarantees with these loans. Instead, he signed what is referred to as "bad boy" guarantees or non-recourse guarantees.

Paragraph 18(g) provides as follows:

(g) if any representation or warranty of the Mortgagor or of any person (a "guarantor") **guaranteeing payment of the Debt** or any portion thereof or the performance by the Mortgagor of any of the terms of the notes, the Mortgage or this Agreement, made herein or in any such guaranty or in any certificate, report, financial statement or other instrument furnished in connection with the making of the notes, the Mortgage, this Agreement or any such guaranty, shall **prove false or misleading in any material respect**;" (emphasis added).

Pursuant to the plain reading of this section Mr. Strulovitch is neither: (i) the Mortgagor; (ii) any person (a "guarantor") guaranteeing payment of the Debt or any portion thereof; or (iii) any person (a "guarantor") guaranteeing . . . the performance by the Mortgagor of any of the terms

of the notes, the Mortgage or this Agreement. Therefore, any representation made by Mr. Strulovitch cannot form the basis for a Paragraph 18(g) default as claimed by Brooklyn Lender.

Accordingly, the Bankruptcy Court properly found that the underlying loan documents were too ambiguous to justify acceleration based on the non-disclosures Brooklyn Lender proffered. (*See* Modified Bench Ruling at Exhibit 2).

More importantly, the Bankruptcy Court found the non-disclosure did not justify acceleration as any misrepresentation did not rise to the level of a **material** misrepresentation as required by the Loan documents. The reason for this holding was largely based on the testimony of Kenneth Stagnari, the Signature Bank representative who testified during the trial, and the Credit Offering Memorandums, which were internal analyses conducted and created by Signature Bank prior to giving any of the Debtors loans.

The Court credited Mr. Stagnari's testimony in that Signature Bank had <u>NEVER</u> declared a non-monetary default and further testified that the main analysis performed prior to closing on the subject loans related to the income stream the properties would ultimately generate to back the loan. This was equally supported by the Credit Offering Memos from Signature Bank which analyzed the rental income and value of the properties to determine the viability of the loans. Additionally, it was proven during trial that Signature Bank did not require Mr. Strulovitch to have any sort of minimum net worth or a minimum credit score for its loan consideration. Furthermore, Signature Bank conducted no analysis of the Debtors' disclosed owners other than Mr. Strulovitch. The identity of beneficial owners, moreover, had no bearing on Brooklyn Lender being paid in full or risk of impairment of the collateral. (*See* Exhibit 2)

Based on the credibility of the witnesses coupled together with Signature Banks records, the Bankruptcy Court found as a factual matter that the non-disclosure was not material and therefore was insufficient to trigger a default under the loan documents.

Brooklyn Lender also asserted that the Debtors failed to promptly cure property violations issued by the Environmental Control Board of the City of New York ("ECB"), Department of Sanitation ("DOS"), Department of Buildings ("DOB") and/or the New York City Department of Housing Preservation and Development ("HPD"), or pay two water and sewer bills. Exhibits CX308 through CX350.

At trial, the Debtors established that all violations and municipal charges were being resolved and paid in the ordinary course. Additionally, Debtors established that (i) there was no "cure" required of the many violations cited by Brooklyn Lender, (ii) all violations cited as events of default were being resolved and/or were dismissed, and (iii) the water bills had been paid or would be paid. By the time of the Bankruptcy Court trial, therefore, Brooklyn Lender complained about the speed of the cure rather than the existence of the violations. (*See* Exhibit 2 at p.30).

Furthermore, the alleged monetary penalty from the violations issued by the various agencies were trivial relative to the loan balances. Similarly, the alleged "unpaid taxes" claimed by Plaintiff as an event of default were merely $13 Property Registration Fees and not actual unpaid taxes as Brooklyn Lender argued. In fact, while Signature Bank was the mortgagee on this loan, Signature Bank was escrowing for the real estate taxes and paying them directly. Therefore there were no actual real estate taxes owed at the time Brooklyn Lender acquired these loans.

The Bankruptcy Court found, therefore, that the alleged monetary amounts in dispute were trivial, and had been "cured" or resolved.

Brooklyn Lender also complained that Herman Greenfield and Eleizer Schwimmer placed subordinate liens on the Properties owned by Debtors, Eighteen Homes LLC and 618 Lafayette LLC, even though Greenfield and Schwimmer subsequently disclaimed the liens and were all removed from the record by the time trial began.

The Bankruptcy Court nonetheless ruled against the subject Debtors on this issue, found that the liens impaired Brooklyn Lender's collateral, and found that the subject Debtors were responsible for default interest for the duration of the period during which the liens were recorded against the subject properties. (*See* Exhibit 2 at p.31).

Brooklyn Lender also sought 24% default interest for the period following the bankruptcy filing since filing for bankruptcy is an event of default under the Mortgages. The Debtors argued that Brooklyn Lender's misconduct caused the Chapter 11 filing and it should not be rewarded for such misconduct. The Debtors argued that Brooklyn Lender declared a default based on defaults that did not exist in a predatory attempt to either effectuate a forfeiture or earn 24% interest, despite the fact that it lacked evidence of the alleged defaults and despite the fact that the loans were performing loans. Misconduct can take many forms, and the Debtors argued that common sense dictates that improperly forcing a debtor to invoke its statutory right to file Chapter 11 to free-up its Properties is one of them.

The Bankruptcy Court found that since the Debtors continued to pay debt service even after filing Chapter 11 petitions, Brooklyn Lender was not entitled to default interest merely because of Bankruptcy filings.

Finally, Brooklyn Lender sought 24% default interest for claimed maturity defaults, even though each of the loans had been previously accelerated and the loan debt declared due prior to the commencement of each respective foreclosure case. In response, the Debtors argued that there

can not be a maturity when there is a pending acceleration, and that the Debtors should be entitled to extend the loans and not be subject to a maturity default. The Debtors further argued that the maturity defaults were directly caused by Brooklyn Lender's improper conduct in accelerating the loans without a basis to do so and, therefore, should not be rewarded for its improper behavior.

On this point, the Bankruptcy Court ruled for Brooklyn Lender finding that for each of the loans that had matured, Brooklyn Lender is entitled to default interest at 24% from the maturity date. (*See* Exhibit 2).

As a result of the Bankruptcy Court upholding the maturity defaults, and the junior lien defaults, the Debtors will likely lose most of their Properties, flying directly in the face of Brooklyn Lender's current claim of bias on the part of the Bankruptcy Court. As a result of the rulings described herein, the Bankruptcy Court denied confirmation of the Debtors' joint plan because it was based on a single commitment letter for refinancing. Since the allowed default interest exceeded the refinancing, the plan was no longer feasible.

Brooklyn Lender appealed that portion of the Bankruptcy Court's decision that denied (a) retroactive default interest to loan inception based on non-disclosure of beneficial interests, (b) default interest for the period after subordinate liens were removed, and (c) default interest based on the Debtors' Chapter 11 filings. This Appeal was perfected and filing on May 6, 2021 (Case Nu: 7:21-cv-02807-CS, ECF Doc. 5).

Thereafter, Debtors ultimately filed amended plans in 3 groupings: 1) the D&W Confirmation Plan for the Debtors D&W and Meserole and Lorimer; 2) Liquidation Plan for all of the remaining loans in which the Bankruptcy Court had found a default in some respect; and 3) a reinstatement plan with respect to those Debtors that had no defaults to continue with the existing loans until loan maturation.

On May 27, 2020, a confirmation hearing took place on the D&W Plan and the Liquidation Plan. A hearing on the reinstatement plan has not yet been held.  As part of the hearing, there was a discussion of the Bunk Williamsburg claim, which is raised in Brooklyn Lender's papers. However, the Court found that Bunk Williams did not object to confirmation of the Plan and that their claim could be resolved in a way that did not affect feasibility of the Plan. (*See* Transcript 5/27/21 at p.219 ECF Doc. 5-3). As part of that hearing, the Bankruptcy Court also fixed the amount of Brooklyn Lender's legal fees, confirmed the two Plans and permitted the Appellees to close on their refinancing.  (*See* Trial Declaration of David Goldwasser at Exhibit 3).

Brooklyn Lender appealed and seeks a stay of the D&W Confirmation Order pending the appeals of both the D&W Confirmation Order and the order which resulted from the August 2020 trial on the defaults asserted by Brooklyn Lender.  Brooklyn Lender did not seek expedited treatment of the appeal which forms the basis of their objections to the subsequent confirmation order.

Prior to the filing of the instant motion, the same motion was filed before the Bankruptcy Court and denied for the reasons stated in the Transcript on the record. (*See* Transcript and Bench Ruling of Judge Drain, June 10, 2021 at Exhibit 1). Thus, this motion ensued.

## ARGUMENT

### I.    Standard Of Review On Motion For Stay Pending Appeal

The decision as to whether or not to grant a stay of an order pending appeal lies within the sound discretion of the court. *In re Gen. Motors Corp.*, 409 BR 24, 30 (Bankr S.D.N.Y.2009); *See, e.g., In re Overmyer,* 53 B.R. 952, 955 (Bankr.S.D.N.Y.1985) ("A motion for a stay pending appeal is discretionary.").

Rule 8007 provides that a motion for a stay of a Bankruptcy Court order may be made to the District Court pending appeal of the order. *See* Fed. R. Bankr. P. 8007(b). To obtain a stay, the debtor must show: (1) a strong likelihood of success on the merits of the appeal; (2) that the movant will suffer irreparable injury if the stay is denied; (3) that no substantial harm will be suffered by the creditor if the stay is granted; and (4) that the stay is in the public's interest. *In re Sabine Oil & Gas Corp.,* No. 16-CV-2561 (JGK), 2016 WL 4203551 (Bankr.S.D.N.Y. Aug. 9, 2016); *In re 1567 Broadway Ownership Assocs.*, 202 B.R. 549, 552–53 (Bankr.S.D.N.Y. 1996) (citations omitted). Failure to satisfy any one of these criteria is fatal to the motion. *In re Sabine Oil & Gas Corp.,* 2016 WL 4203551 at *1..

The burden on the movant for a stay pending appeal is a "heavy" one. *In re Gen. Motors Corp.*, 409 BR at 30. To be successful, the moving party must "show satisfactory evidence on all four criteria." *In re Turner,* 207 B.R. 373, 375 (2d Cir. BAP 1997). Moreover, if the movant "seeks the imposition of a stay without a bond, the applicant has the burden of demonstrating why the court should deviate from the ordinary full security requirement." *In re Gen. Motors Corp.,* 409 BR at 30.

The motion filed by Brooklyn Lender, seeking a stay pending appeal, fails to establish all the required elements and therefore the instant motion requires denial, as previously decided by Judge Drain when a similar application was presented to him.

## II. Brooklyn Lender Fails To Establish Irreparable Injury As Required

### A. Mootness Alone Is Insufficient To Justify A Stay

Since the Court in *In re Gen. Motors Corp.* held that the failure to establish any single element is sufficient to defeat a motion for a stay pending appeal, the evaluation of the irreparable injury alone defeats the motion filed by Brooklyn Lender.

Brooklyn Lender's moving papers claim irreparable injury based on a single claim of mootness of the appeal if a stay pending appeal is not granted. However, the "majority of courts have held that a risk of mootness, standing alone, does not constitute irreparable harm." *In re Sabine Oil & Gas Corp.*, Bankr L Rep P 82989 (S.D.N.Y. Aug. 9, 2016); *See also In re Adelphia Commc'ns Corp.*, 361 B.R. 337, 347 (Bankr. S.D.N.Y. 2007); *In re DJK Residential, LLC*, No. 08-10375 (JMP), 2008 WL 650389, at *3 (S.D.N.Y. Mar. 7, 2008). Even courts that conclude that equitable mootness might be enough to satisfy the irreparable harm requirement recognize that it is still necessary to balance the alleged injury against the possible injury to other parties. *In re Gen. Motors Corp.*, 409 B.R. at 31.

The Court in *In re DJK Residential, LLC*, analyzed the claim of mootness as balanced against the possible injury to others with a parallel argument as to Brooklyn Lender's claims and arguments on appeal. Similar to the facts of *In re DJK Residential, LLC,* the argument advanced by Brooklyn Lender on appeal is that the Bankruptcy Court was wrong on the merits of its prior decision in disallowing default interest. There is no "troubling" claim of error here, and therefore the holding of the majority view that the risk of mootness is insufficient to establish irreparable injury should equally apply.

The cases cited by Brooklyn Lender for the proposition that mootness alone is sufficient are misleading. For instance, the Court in *In re St. Johnsbury Trucking Co., Inc.*, 185 B.R. 687, 691 (Bankr. S.D.N.Y.1995) did hold that a stay was appropriate but it was not solely based on mootness. In fact, the Court held that "the equities and the public interest both support issuance of a stay pending appeal." *Id.* Additionally, the relief sought by the appeal was not merely a financial risk but had risk of releases of civil liability relating to an appointment as Chief Responsibly Officer, which is substantially different that the case at bar. Additionally, it was noted

by the Court that the Debtors in that action had the ability prior to the application being filed for the stay to declare the plan effective and failed to do so, knowing the appeal was pending. That is simply unsupported by the holding of the case. Even the Court in *In re Gen. Motors Corp.*, compared and contrasted the facts of *In re St. Johnsbury Trucking Co., Inc.,* and clearly identified that the stay would only delay things a few weeks as part of the analysis. *See In re Gen. Motors Corp.*, 409 B.R. at 33. Based on the factual considerations by the Court, the holding of *In re St. Johnsbury Trucking Co., Inc.* is not analogous to the case at bar and therefore cannot be used for the proposition that mootness alone is sufficient.

Further, Brooklyn Lender's use of *In re Charter Communications, Inc.*, 691 F.3d 476 (2d Cir. 2012) does not support that mootness is definite in the case at bar and sufficient to warrant a stay. In fact, the Court in *In re Charter Communications, Inc.*, clearly and concisely laid out factors whereby equitable mootness can be overcome. *Id*. at 482.

Overlooked by Brooklyn Lender's motion is the fact that the injury to Brooklyn Lender, while framed as mootness is really a financial harm only. To establish irreparable harm, a movant must allege an injury "requiring a remedy of more than mere money damages." *In re Sabine Oil & Gas Corp.*, 551 BR 132, 143-44 (Bankr. S.D.N.Y. 2016) citing *Ford v. Reynolds,* 316 F.3d 351, 355 (2d Cir. 2003). The entire basis for Brooklyn Lender's two appeals is financial in nature, namely that (i) the Court improperly disallowed default interest in finding the claim for default was not proper, and (ii) that the Court failed to award Brooklyn Lender the entirety of the amount of legal fees it sought on the D&W Confirmation Order. Ultimately, the appeals at their cores are seeking further monetary awards, in default interest, which is insufficient to establish irreparable harm.

Failing to satisfy the single prong of irreparable harm, Brooklyn Lender's motion must be denied.

B. <u>Harm Or Risk To Non-Movant Is Substantial</u>

A further evaluation of harm is required to weigh and balance the harm to Brooklyn Lender versus the harm to others. In balancing the harms, it is clear that the harm to D&W far outweighs any potential harm to Brooklyn Lender, justifying the denial of the instant motion. In addition to the Debtors harm, the Court should also consider and evaluate the harm to the Debtors' other creditors, none of whom objected to the confirmation of the plan and in some cases compromised their claims in order for the plans to be confirmed, in order to move forward.

Brooklyn Lender is essentially asking the Court to force D&W to remain in bankruptcy for an indeterminate period of time while its appeal is decided, which will impair D&W's finances, its operations and all of its business relationships. In the interim, D&W would be forced to expend valuable resources to pay, *inter alia*, fees charged by the U.S. Trustee, insurance fees, administrative costs, which total thousands of dollars per month, none of which at this point is D&W willing to bond or protect. D&W would also likely incur additional legal fees for what one could reasonably presume would be necessary given Brooklyn Lender's litigious nature, which is shown through the fact that Brooklyn Lender has already accrued approximately $8 million dollars in attorney's fees.

D&W would have no ability to sell the properties it owns if presented with a logical sale offer. Continuing in bankruptcy could impact D&W's relationship with its tenants and vendors, who would be dealing with an entity that is unable to emerge from bankruptcy for multiple years. The continuation of the bankruptcy also constructively removes the Debtors ability to independently manage and operate their buildings. Any actions, outside the normal course, would

require court intervention and consent from the Bankruptcy Court, creating again, further expenses and fees.

Further, the D&W plan is dependent on a 12-month bridge loan, with potential extensions from Maguire Capital Group. This deal is an arm's length transaction in which Maguire is looking to actually do the deal. The Commitment does have a condition that there is no stay pending appeal and therefore any stay would materially jeopardize the financing under which the D&W Plan is premised. Realistically, the appeals in this case are also not going to be decided so quickly, likely with an appeal of any decision of the current appeals. Therefore, accounting for that length of time, there are serious and real concerns of inflation, interest rate changes among other financial considerations which need to be taken into account.

Any stay would also have the effect of forcing a debtor, who is primed and ready to emerge from Chapter 11, to stay in business with Brooklyn Lender, a predatory lender whose business model is to buy debt, including debt in good standing with its lender as was the case here, and declare borrowers in default based on non-material defaults, forcing those entities to incur large legal fees to contest these defaults. The Debtors have been litigating with Brooklyn Lender since 2017 and it's enough. D&W has the right as a debtor to pay the full amount owed for claims against it. That is what it is seeking to do. Yet, Brooklyn Lender is essentially refusing to be paid tens of millions of dollars and be free of a relationship with what it claims is a poor borrower who is engaged in fraud. The Court should not sanction this and should not want he Debtors to languish in Bankruptcy Court unnecessarily. *See In re Gen. Motors Corp.*, 409 B.R. at 32.

### III.    The Relief Proposed By Brooklyn Lender In Lieu Of A Bond Is Insufficient

Brooklyn Lender is seeking to impose a stay pending appeal of the D&W Confirmation Plan which currently includes exit financing of $15.8 million without having to post a bond. In

that vein, and in following the Court's holding in *In re DJK Residential, LLC*, Brooklyn was required to demonstrate why the Court should deviate from the full security requirements normally imposed and failed to do so. *In re DJK Residential, LLC*, 2008 WL 650389, at *2. Accordingly, this Court should not deviate from the normal bond requirement at the risk of Debtors.

The normal course of practice would be for the litigant to post a bond, thereby creating an automatic stay. While a movant may seek the imposition of a stay without a bond, such as the case here, the applicant has the burden of demonstrating why a Court should deviate from the ordinary formal security requirement. *In re Motors Liquidation Co.*, 539 B.R. 676, 686 (Bankr. S.D.N.Y. 2015); *see Morgan Guar. Tr. Co. of New York v. Republic of Palau*, 702 F. Supp. 60, 65 (S.D.N.Y. 1988)(recognizing that  an inflexible requirement for impressment of a lien and denial of a stay of execution unless a supersedeas bond in the full amount of the judgment is posted can in some circumstances   be irrational, unnecessary,    and self-defeating, amounting to    a confiscation of the judgment debtor's property without due process.")

In determining whether a bond should be ordered, the court looks to whether the bond would be necessary to protect "against diminution in the value of property pending appeal" and to "secure the prevailing party against any loss that might be sustained because of an ineffectual appeal."[56] Moreover, the posting of a bond "guarantees the costs of delay incident to the appeal. *In re Adelphia Commc'ns Corp.*, 361 B.R. at 350.

When a litigant proposes an alternative form of security other than a bond, the Court should only accept such a proposal in "extraordinary circumstances" and only where alternative means of securing the judgment creditor's interests are available. *Leevson v. Aqualife USA Inc.*, No. 14CIV6905JBWVMS, 2017 WL 6541766, at *2 (E.D.N.Y. Dec. 8, 2017), *report and recommendation adopted,* No. 14-CV-6905, 2017 WL 6550683 (E.D.N.Y. Dec. 21, 2017); It is

the appellant's "burden to demonstrate that posting a full bond is impossible or impracticable, and to propose a plan that will provide adequate security for the appellee." *Id*. at *3.

Brooklyn Lender's proposal, in lieu of a bond, should not be considered by this Court as a serious proposal intended to protect the Debtors. *See* Transcript p. 38, 42. Brooklyn Lender cannot meet any of its stated obligations to be granted a stay, much less can it overcome its "heavy burden" in convincing the Court to accept its proposed alternative form of security. As such, it respectfully submitted that Brooklyn Lender's proposed relief is insufficient, and they cannot be granted a stay. *See Blue Citi LLC v. 5Barz Int'l Inc.,* No. 16-CV-9027 (VEC), 2019 WL 10890126 (S.D.N.Y. Feb. 6, 2019) ("When a party fails to offer an alternative form of security, however, 'courts do not hesitate to deny motions to stay execution pending appeal'") (internal quotations omitted).

As noted by Judge Drain on the original request for a stay, Brooklyn Lender's proposal is a "first" in bankruptcy circles. *See* Transcript p. 41. Brooklyn Lender's proposed relief in lieu of a bond is twofold. First, it offers an agreement to waive the 24 percent interest accruing during the period of its appeal unless, of course, it is successful on appeal. Secondly, it has proposed a commitment letter for a loan to the Debtors, i.e., to have the debtor incur an obligation to it in place of the Maguire exit financing that is an element of the restructuring plan.

Brooklyn Lender's plan is fatally flawed, as well as has fundamental problem[s] with Brooklyn Lender's proposal. What Brooklyn Lender seeks is in fact not a "stay" at all. Rather, Brooklyn Lender's proposal would fundamentally rewrite the restructuring plan to the point that it would "change the very document that's being appealed from." *See* Transcript p. 38. Such a significant modification is a plainly inadequate ground to seek a stay and is determinative in denying such a proposal. *See In re Sabine Oil & Gas Corp*., No. 16-CV-2561 (JGK), 2016 WL 4203551 (Bankr.S.D.N.Y. Aug. 9, 2016); *In re Calpine Corp*., No. 05-60200, 2008 WL 207841,

at *6 (Bankr. S.D.N.Y. Jan. 24, 2008)(rejecting a similar effort by "disappointed objectors" to an Order of Confirmation of a Plan that would restructure the Plan during the pendency of the appeal of the Order of Confirmation.")

Brooklyn Lender's request for alternative security in lieu of the bond is analogous to the analysis in *In re Sabine Oil & Gas Corp*. The Court noted that the relief sought provided for a "a significant modification of the Plan and would have the effect of unraveling the entire Plan" which is not permitted under Rule 8007. *See In re Sabine Oil & Gas Corp*., 2016 WL 4203551 at *3. An objector to the plan does not have the power to seek a material modification to the confirmed plan. *Id*. at *4. Brooklyn Lender's request would replace the exit lender. Accordingly, the stay request was denied as should also occur in the instant motion without further consideration.

Further the commitment letter itself, as proposed by Brooklyn Lender, while on the face of it is basically identical, is not the same deal for several reasons, including that Brooklyn Lender's interests lie with itself, not the Debtors.

Brooklyn Lender's commitment is similarly premised upon the formation of ten (10) single purpose entities, each to be bankruptcy remote, a term of art which requires, among other things, an extensive analysis by Brooklyn Lender's counsel and, generally, a coinciding opinion letter "running generally from 25 to 40 single-spaced pages." *See* Transcript p. 39; *see generally In re Gen. Growth Props*., 409 B.R. 43, n.15 (Bankr. S.D.N.Y. 2009). This analysis has already been performed by Maguire Capital. The inclusion of this clause is done for purposes of making the commitment letters look identical without any regard on Brooklyn Lender's side for the analysis that is required. Based on the history between Debtors and Brooklyn Lender, including approximately 5 years of litigation, and the level of distrust between the parties, the Debtors,

together with the Court, should be justified in believing that Brooklyn Lender would not in good faith engage in that analysis in a timely way.

There are also several clauses of the Brooklyn Lender commitment letter which permits the sole discretion of the lender. In fact, there are 12 clauses in which rely on the sole discretion of the lender, namely Brooklyn Lender. This poses a serious problem. Admittedly, the Maguire Capital commitment equally includes that discretion. However, the relationship between the parties is undisputedly different. One of these clauses is the Financial Reporting Covenant in which there is a requirement that information be provided to the lender in a form acceptable to the lender. It goes without saying that this clause is particularly troublesome given the fact that such "financial information" provided by Debtors is what Brooklyn Lender proceeded at trial on as a default. The discretionary portion of the commitment only highlights the problems with the commitment as a legitimate security for the stay pending appeal. The relationship between Brooklyn Lender and Debtors is based in animosity and distrust while the relationship between Maguire and Debtors is based in trust and mutual interest of business.

As such, the relief proposed by Brooklyn Lender in lieu of a bond is patently insufficient and of no merit.

### IV. Brooklyn Lender's Appeal Is Unlikely To Be Successful On The Merits

Brooklyn Lender's request in the instant motion is to stay the D&W Confirmation Order pending the appeal of two (2) orders: (i) the Amended D&W Confirmation Order dated June 10, 2021, and (ii) the Disallowance Order dated February 21, 2021. An analysis of the likelihood of success on the merits is unnecessary here since Brooklyn Lender has failed to establish several of the other elements, as discussed in length *supra*. Notwithstanding, even a review of the likelihood of success warrants denial of the instant motion for a stay pending appeal. The "likelihood of

success" or "possibility of success" element requires the movant to establish a substantial possibility of success on appeal. *In re Gen. Motors Corp.*, 409 BR at 30. Brooklyn Lender has not established this.

While the Bankruptcy Court's legal conclusions are reviewed de novo, its findings of fact are reviewed only for clear error. *In re Motors Liquidation Co.*, 430 B.R. 65, 77 (S.D.N.Y. 2010). A reviewing court must " 'accept the ultimate factual determination of the fact-finder unless that determination either is completely devoid of minimum evidentiary support displaying some hue of credibility or bears no rational relationship to the supportive evidentiary data. *Id*.

A. <u>Brooklyn Lender's Request For Additional Legal Fees</u>

As part of the D&W Confirmation Order, the Court awarded Brooklyn Lender legal fees in the amount of $117,000 based on a calculation presented by Debtors, the terms of the Loan documents along with the ruling made to disallow certain claimed defaults and default interest. In doing such, the Court was not only justified but correct in limiting the legal fees awarded to that time period which fell after the maturity date, which was decided by the Bankruptcy Court to be a default in June 2020.

Contrary to the assertions of Brooklyn Lender, its fees are not dictated solely by the Bankruptcy Code but rather are determined by the Loan Documents themselves. Recovery of fees, costs, and charges pursuant to section 506(b) is allowed only if they are <u>reasonable and provided for in the agreement under which the claim arose</u>. *In re Vest Assoc.,* 217 BR 696, 700 (Bankr. S.D.N.Y. 1998). The Appellees sought to disallow Brooklyn Lender's Claim for "Legal Fees" in its entirety. "In determining reasonable compensation for an attorney, the court must consider such factors as the time, effort, and skill required; the difficulty of the questions presented; counsel's experience, ability, and reputation; the fee customarily charged in the locality; and the

contingency or certainty of compensation. *See Citicorp Trust Bank, FSB,* 155 A.D.3d at 935-936 (*quoting Vigo*, 121 A.D.3d at 780 (*citing Green v. Silver*, 79 A.D.3d 1097, 1098, 913 N.Y.S.2d 574 (2d Dep't 2010)). An applicant seeking to recover its attorneys' fees must provide the Court with "sufficient information upon which to make an informed assessment of the reasonable value of the legal services rendered." *Citicorp Trust Bank, FSB*, 155 A.D.3d at 935 (*citing People's United Bank*, 143 A.D.3d at 691). "There must be a sufficient affidavit of services, detailing the hours reasonably expended ... and the prevailing hourly rate for similar legal work in the community." *Citicorp Trust Bank, FSB*, 155 A.D.3d at 935 (rejecting plaintiff's counsel's affirmation of services because it failed to set forth counsel's experience, ability, and reputation, and failed to detail the prevailing hourly rate for similar legal work in the community) (quoting *SO/Bluestar, LLC v. Canarsie Hotel Corp.*, 33 A.D.3d 986, 988, 825 N.Y.S.2d 80 (2d Dep't 2006)).

The legal fees sought by Brooklyn Lender which were not awarded were neither reasonable nor were they provided for in the Loan documents.  The invoices were so full of redactions that it was impossible for the Appellees or the Court to properly consider the validity of the Claim. Absent such sufficient evidentiary support, the claim for "Legal Fees" had no *prima facie* merit. Therefore, the request for legal fees beyond the $117,000 awarded was properly denied.

The $117,000.00 in legal fees was calculated and proposed to the Court as follows:

| Exhibit | Invoice Date as of | Firm | Legal Fees Charged | D&W share of Legal Fees (1/14) | Disbursements | D&W share of Legal Fees (1/14) |
|---|---|---|---|---|---|---|
| CX477 | 6/30/2020 | Kasowitz | $279,885.55 | $19,991.83 | $351.68 | $25.12 |
| CX519 | 8/31/2020 | Kasowitz | $1,033,379.88 | $73,812.85 | $131,189.80 | $9,370.70 |
| CX519 | 9/30/2020 | Kasowitz | $102,424.35 | $7,316.03 | $5,864.35 | $418.88 |
| CX519 | 11/30/2020 | Kasowitz | $22,528.80 | $1,609.20 | $3,762.15 | $268.73 |
| CX519 | 12/31/2020 | Kasowitz | $62,431.60 | $4,459.40 | $1,066.37 | $76.17 |

This chart identifies the legal fees issued for the time-period post the D&W loan maturity date of June 10, 2020. Without even considering the reasonableness prong of the analysis, the proportionate share of the legal fees (without disbursements) totals $107,189.31 for the relevant period. This was derived by taking the total legal fees billed for the post-maturity period and dividing by the number of loans for all debtors, 14. This calculation, as identified above, totals $107,189.31, exclusive of any claims as to reasonableness or other defenses to the outrageous legal fees charged. Calculation of the disbursements was determined similarly, finding the proportionate share to total $10,159.60 attributable to the D&W loan. The total of the two numbers justifies the $117,000.00 sum, without any consideration for reasonableness or whether the entries were warranted.

The mortgages provide for the recovery of "reasonable" attorneys' fees in paragraph 18(j), but only to "protect the Mortgagee's interest in the Mortgaged Property." Under paragraph 19, attorneys' fees are recoverable "If the Mortgagor fails to make any payment or to do any act as herein provided. . ." Since debt service was paid and all acts performed, even if the Mortgagee has provided evidentiary support for attorneys' fees, the Mortgages do not permit legal fees for collection action arising from a misrepresentation, particularly since the alleged misrepresentations were not made by "Mortgagor."

Moreover, since the acceleration itself was an improper breach of the loan documents, legal fees incurred as a result thereof are not allowable. In that regard, a failure to properly accelerate is a complete defense to a mortgage foreclosure action. *See,* 1 Bergman, *New York Mortgage Foreclosures*, § 4.05[1][b]. Where there is no basis for the acceleration of a mortgage obligation, an acceleration notice sent by the lender is a nullity and constitutes a material breach of the loan agreement. *Household Fin. Realty Corp. of NY v Dunlap*, 15 Misc. 3d 659, 665 (Sup Ct. N.Y. Cty.

2007); *see also* Bergman, B., *Strict Acceleration in New York Mortgage Foreclosure-Has the Doctrine Eroded?*, Pace Law Review, 480 (June 1988).

According to the Bankruptcy Court, since there was no evidence of a material default, by wrongfully accelerating the debt Brooklyn Lender materially breached the agreement. A breach is material if it goes to the "root" of the agreement, *i.e.*, it defeats the object of the parties and deprives the injured party of the benefit it justifiably expected. *Frank Felix Assoc. v Austin Drugs*, Docket No. 96-7604, 1997 U.S. App. LEXIS 19795 at * 14 (2d Cir. Apr. 10, 1997); *Times Mirror Mags., Inc. v Field & Stream Licenses Co.*, 103 F. Supp. 2d 711, 731 (S.D.N.Y. 2000). Not surprisingly, courts have found that the improper acceleration of a mortgage loan constitutes a material breach of the loan agreement. *See Seidman v Indus. Recycling Props., Inc.*, 106 A.D.3d 983, 984-985 (2d Dep't 2013)(the improper acceleration of a mortgage loan and commencement of a foreclosure action constitutes a breach of the loan agreement); *see also Mayo v Wells Fargo Bank, N.A.*, 2015 U.S. Dist. LEXIS 26383 at * 8 (E.D Va. Mar. 4, 2015) (a deficient acceleration notice may constitute a material breach); *Johnson Fed. Home Loan Mortg. Corp.*, No. 4:13cv163, 2013 U.S. Dist. Lexis 97713 at * 9 (W.D. Va. 2013) (same).

In summary, Brooklyn Lender improperly noticed alleged defaults asserting ownership misrepresentations and other trivial defaults and utilized those asserted defaults as the basis to accelerate the amounts due under the loan, commence a foreclosure action and seek the appointment of a receiver. Brooklyn Lender's breach was material since it goes to the root of the contract and was intended to deprive the Appellees of the right to its use and enjoyment of their Properties.

When one party commits a material breach of a contract, the other party to the contract is relieved, or excused, from further performance under the contract. *Grace v Nappa*, 46 N.Y.2d

560, 567 (1979). Having repudiated and materially breached its contract with Appellees, Brooklyn Lender could not claim relief either in the form of foreclosure or damages. *Net2Globe Intl. v Time Warner Telecom of NY*, 273 F Supp. 2d 436, 457 (S.D.N.Y 2003); *see also Daniel Perla Assocs. LP v. ZLD Realty LLC*, 277 A.D.2d 115, 115 (1st Dep't 2000) (upholding lower court's dismissal of the foreclosure complaint and reducing the principal of the mortgage based upon plaintiff's bad faith breach). The legal fees arise from an improper acceleration and must be disallowed as similarly improper.

Finally, a Chapter 11 filing is a not an open invitation for a lender to "over-lawyer" the case. In reviewing the reasonableness of a secured creditor's claim for legal fees under Section 506(b), "courts must also consider reasonableness within the general policies and provisions of the Bankruptcy Code, and bankruptcy courts have inherent discretion to review fee claims for potential abuse." *In re Glazier Group, Inc.,* 2013 WL 1856305, *3 (Bankr. S.D.N.Y. 2013).

While the standard has long been defined as "whether the creditor reasonably believed the services were necessary to protect its interest in the debtor's property," *In re PCH Assocs.,* 122 B.R. 181, 204 (Bankr. S.D.N.Y. 1990), it has also been held that:

> Secured creditors are not entitled to be reimbursed for fees incurred in every action taken by their counsel . . . It is unreasonable to seek reimbursement for fees that are not cost justified either by the economics of the situation or necessary to preservation of the creditor's interest in light of the legal issues involved. (internal citations omitted)

*In re Woods Auto Gallery, Inc.,* 379 B.R. 875, 884-885 (Bankr. W.D. Mo. 2007).

As one Court cautioned, "creditors are entitled to engage counsel and pay for constant, comprehensive, and aggressive representation, but where services are not reasonably necessary or where action is taken because of an attorney's excessive caution or overzealous advocacy, courts have the right and the duty, in the exercise of their discretion, to disallow fees and costs under§

506(b)." *In re Wonder Corp. of America,* 72 B.R. 580, 591 (Bankr. D.Conn. 1987), *affirmed* 82 B.R. 186 (D.Conn. 1988).

Courts should not accept the fees as billed without a sound justification for the services performed. *See, e.g. In re Glazier Group, Inc.*, supra, 2013 WL at *3 ("the reasonableness of counsel's activities in representing a secured creditor may depend on the extent to which the creditor's secured position is jeopardized. . . When there is only minimal risk, circumstances will generally require that counsel respond only to issues of material concern".) (Internal citations and quotation marks omitted). As explained in *In re Canal Asphalt, Inc*., 2017 WL 1956849, at *7 (Bankr. S.D.N.Y. 2017):

> a secured creditor is not entitled to compensation for its attorneys' fees for every action it takes by claiming that its rights have been affected. Time billed for services not related to protecting the claimant's secured position is not allowed. The services employed have to be necessary to protect creditor's interest in the debtor's property. A secured creditor can recover only attorneys' fees which are incurred to achieve the objective of payment, or reasonably necessary to enforce a debtor's obligations to collect the amount remaining due pursuant to those obligations. Thus, where it is clear that the claimant is requesting fees that a typical secured creditor in its position would not have incurred to protect or recover on its secured claim- for example, to acquire the collateral-such fees are not allowable under section 506(b). (Internal citations and quotation marks omitted).

Even if the millions of dollars of fees were otherwise reasonable and allowable under the mortgages, the legal *fees* incurred by Brooklyn Lender could have been denied in their entirety, because, as noted above, Brooklyn Lender incurred those fees prosecuting a bad faith foreclosure action in breach of the Loan Agreements, followed by bad faith bankruptcy strategy.

### B. Brooklyn Lender's Appeal On The Disallowance Order

Contrary to the assertions of Brooklyn Lender, movant has not made a showing of a likelihood of success on the merits of the appeals, to justify the instant motion. While the appeal

filed by Brooklyn Lender is voluminous, and Debtors dispute each and every legal argument presented, the motion here focuses on the claim that the Court erred in finding that claimed misrepresentations as to ownership of specific entities, including the Debtors, was material such that the event of default was justified. However, the Court in assessing credibility and reviewing the documents presented at trial, properly determined that any alleged misrepresentation was not material and therefore did not entitle Brooklyn Lender to a default and default interest.

Under New York law, a lender must strictly comply with the contract provisions governing notice of default and acceleration of its loan. *See Destiny USA Holdings, LLC v. Citigroup Global Mkts. Realty Corp.*, 24 Misc.3d 1222(A) at *15, 897 N.Y.S.2d 669 (Sup. Ct., Ond. Cty.), *aff'd in part and modified in part*, 69 A.D.3d 212 (4th Dep't 2009); *Dale v. Industrial Ceramics, Inc.*, 150 Misc.2d 935, 937, 571 N.Y.S.2d 185 (Sup. Ct., N.Y. Cty. 1991) (holding that notice provisions under promissory note that trigger acceleration of loan must be strictly construed).

A lender's strict compliance with the default provisions is required because, where there is no basis to accelerate a mortgage obligation, an acceleration notice sent by the lender is a nullity and constitutes a material breach of the loan agreement. *Seidman v. Indus. Recycling Props., Inc.*, 106 A.D.3d at 984-985 (lender's improper acceleration of mortgage loan and commencement of foreclosure action constituted a breach of loan agreement); *Luxonomy Cars, Inc. v. Citibank, N.A.*, 65 A.D.2d 549, 550, 408 N.Y.S.2d 951 (2d Dep't 1978) (lender's wrongful acceleration of note as predicate for foreclosure action was an actionable breach of contract); *cf. Rocky Aspen Management 204 LLC v. Hanford Holdings LLC*, 16 Civ. 4270 (VM), 2018 WL 3471809, at *12 (S.D.N.Y. June 28, 2018), *subsequent determination*, 358 F.Supp.3d 279 (S.D.N.Y. Jan. 30, 2019), *aff'd in part, vacated in part*, 2019 WL 1447260 (S.D.N.Y., Mar. 8, 2019) (allegations that lender wrongfully accelerated loan by wrongfully declaring a default stated a breach of contract claim);

*Household Fin. Realty Corp. of NY v. Dunlap*, 15 Misc.3d at 665 (where "there was no basis for the acceleration of the mortgage, and the acceleration notice plaintiff sent was premature and therefore improper," "[i]t cannot form the predicate basis for this foreclosure action ….").

Under these principles, Brooklyn Lender was required to strictly comply with the various provisions in the Loan Agreement governing the "Events of Default" that constituted a basis for accelerating the loan. As shown above, however, Brooklyn Lender had no basis to declare a misrepresentation default at the time it called the default, and the Bankruptcy Court correctly found as a factual matter that the loan application materials upon which Brooklyn Lender relies were too ambiguous to justify a misrepresentation default, in addition to the fact that the lender's collateral or ability to be repaid was in no way affected by any such failure to disclose.

Even if the loan application materials were not ambiguous, the Bankruptcy Court correctly found that under New York law, that a court has discretion to disallow Brooklyn Lender's Claim for pre-petition default interest. *See In re Residential Capital, LLC*, 508 B.R. 851, 856 (Bankr. S.D.N.Y 2014) ("In an action of an equitable nature, the recovery of interest is within the court's discretion," and "[t]he exercise of that discretion will be governed by the particular facts in each case, including any wrongful conduct by either party." *See also Citicorp Trust Bank, FSB v. Vidaurre*, 155 A.D.3d 934, 935-936, 65 N.Y.S.3d 237 (2d Dep't 2017) (rejecting claim for interest that accrued during period of time tolled by lender's misconduct in delaying prosecution of foreclosure action); *Dayan v. York*, 51 A.D.3d 964, 965, 859 N.Y.S.2d 673 (2d Dep't 2008), *lv. to appeal denied*, 12 N.Y.3d 839, 881 N.Y.S.2d 13 (Mem) (2009).

In 1977, the Court of Appeals adopted the dissenting opinion of Chief Judge Cardozo and applied "the general equitable principle that 'the gravity of the fault must be compared with the gravity of the hardship.'" *J.N.A. Realty Corp. v. Cross Bay Chelsea, Inc.*, 42 N.Y.2d 392 (1977).

Evolving case law has stepped away from the decision in *Graf v. Hope Building Corp.*, 254 N.Y. 1 (1930), which held "acceleration clauses in mortgages will be strictly enforced irrespective of the circumstances and nature of default." *Karas*, 91 A.D.2d at 812, citing to *Blomgren,* 18 A.D.2d 979; 100 Eighth Ave. Corp., 4 A.D.2d 754; More Realty Corp., 232 A.D. 705; Scelza v. Ryba, 169 N.Y.S.2d 462 (Sup. Ct. 1957); *Domus Realty Corp. v. 3440 Realty Co.,* 40 N.Y.S.2d 69 (Sup. Ct. 1943), aff'd, 266 A.D. 725 (1st Dep't 1943). Indeed, the dissenting opinion of Chief Judge Cardozo, which stated that the equitable remedy of foreclosure may be denied based upon the circumstances and nature of default, has been embraced instead. *See J.N.A. Realty Corp.*, 42 N.Y.2d at 392.

Chief Judge Cardozo stated that strict enforcement is unconscionable where, among other things, the default "is limited to a trifling balance." *Graf*, 254 N.Y. at 12 (Cardozo, J., dissenting). In *J.N.A. Realty Corp.*, the Court held that "[t]here would be a forfeiture and the gravity of the loss is certainly out of all proportion to the gravity of the fault," warranting equitable relief if there is no prejudice. 42 N.Y.2d at 399-40; accord, *4 B 's Realty* 818 F.Supp.2d at 659 *(quoting* N.Y.C.P.L.R. § 500l(a)) *(citing Danielowich v. PEL Dev.,* 292 A.D.2d 414, 415, 739 N.Y.S.2d 408, 409 (2d Dep't 2002)); *See generally Blomgren v. Tinton 763 Corp.*, 18 A.D.2d 979, 980 (1st Dep't 1963); *W.F.M. Restaurant, Inc. v. Austern*, 35 N.Y.2d 610 (1974); *In Rockaway Park Series Corp. v. Hollis Automotive Corp.*, 135 N.Y.S.2d 588 (Sup. Ct. 1954); *Caspert v. Anderson Apartments*, 94 N.Y.S.2d 521 (Sup. Ct. 1949); *European American Bank v. Harper*, 163 A.D.2d 458 (2d Dep't 1990); *ING Real Estate* Finance *(USA) LLC v. Park Ave. Hotel Acquisition LLC*, 26 Misc.3d 1226(A) (Sup. Ct. 2010); *Fifty States Management Corp. v. Pioneer Auto Parks, Inc.*, 46 N.Y.2d 573 (1979).

Under the Bankruptcy Code, lender misconduct is also grounds to deny default interest. *See, e.g., In re General Growth Properties, Inc.*, 451 B.R. 323 (Bankr. S.D.N.Y. 2011); *In re Northwest Airlines, Corp.*, 2007 WL 3376895, (Bankr. S.D.N.Y. 2007). In any event, the Bankruptcy Court may disregard a contractual provision calling for high default interest rates when such rates would be inequitable. In *In re P. G. Realty Co.,* 220 B.R. 773 (Bankr. E.D.N.Y. 1998), the Court held that "it possesses the power to modify rights created by state law or private agreement. Indeed, the Bankruptcy Code itself contains many provisions which specifically modify or abrogate such rights. The Code is also replete with instances in which Congress has made such a power explicit." *Id.,* 220 B.R. at 780 (citations omitted). *See also In re Marfin Ready Afix Corp.,* 220 B.R. 148, 155-56 (Bankr. E.D.N.Y. 1998) (acknowledging that Courts may take a flexible approach when considering the application of contractual default interest rates); *accord, In re Vest Assocs.,* 217 B.R. 696, 702-703 (S.D.N.Y. 1998).

In summary, even if Brooklyn Lender had technical grounds to accelerate and foreclose, the default interest demanded is disproportionate to the allegations of default, and under such circumstances, equity permits relief to the borrowers under both the Bankrtupcy Code and New York law. As such, Brooklyn Lender's claim to default interest was properly disallowed in accordance with the Modified Bench Ruling. (*See* Ex. 2).

The case law Brooklyn Lender relied upon below, therefore, did not apply. Unlike here, where the Debtors contend that ownership was unchanged, in each of the cases cited, the issue was whether the party concealed an ownership change. And notably, in none of the cited cases, was the alleged ownership change the basis for a mortgage default. For example, in *GKK 2 Herald LLC v. City of New York Tax Appeals Tribunal*, 154 A.D.3d 213, 226-227, 63 N.Y.S.3d 20 (1st Dep't 2017), a case involving taxation on an ownership change, the court found that there was a

beneficial ownership change because the prior owner had no interest in the property after the change, unlike here where only profit sharing interests exist. In *GKK-2* the court distinguished that ownership change from the circumstances of this case where there was a "mere change in form of ownership." *Id.*

The same analysis applied in *Yelencsics v. Comm'r of Internal Revenue*, 74 T.C. 1513, 1527 (1980), *acq. recommended by RE: ANTHONY YELENCSICS AND NORMA YELENCSICS, ET AL V. COMMISSIONER, AOD-1981-41* (IRS AOD Jan. 30, 1981), *and acq, IRS Announcement Relating to: Rawson, Yelencsics* (IRS ACQ Dec. 31, 1981), where the Tax Court determined that, unlike here, an ownership change had occurred because of the transfer of incidents of beneficial ownership, despite the prior owner remaining as owner of record. The other cases Brooklyn Lender cited below make the same analysis in other contexts – none however in the context of a mortgage default for misrepresentation.

In determining whether a breach is material, courts consider the particular facts and circumstances existing at the time the mortgages were accelerated, including: (i) whether plaintiff sustained damages; (ii) whether the collateral had been impaired; (iii) whether the obligors were viable and capable of paying debt service; (iv) "whether the essential part of the bargain -- timely payment of the installments due under the note -- has been and is being satisfied;" and (v) whether the lender's actions were inequitable under the particular facts and circumstances. *See Tunnell Publishing Co. v. Straus Communications, Inc.*, 160 A.D.2d at 1032-1033; *Home Savings Bank of Upstate New York v. Baer Properties, Ltd.*, 92 A.D.2d at 99-100.

Brooklyn Lender argues that the identity of the profit-sharing participants is material because the commitment letters state "that the identity of the persons with whom [Signature] deals with is of material importance to it." In these cases, however, the Debtors did not misrepresent

the persons whom Signature would deal with. That person was Cheskiel Strulovitch (or in some instances Moses Strulovitch or Joshua Wagschal) all of whom were disclosed to Signature Bank. The non-member profit sharing participants lacked authority to deal with Signature and lacked authority to replace Cheskiel Strulovitch as the managing member with authority to deal with Signature.

Brooklyn Lender nonetheless relied on case law the Debtors cited for the principle that a 'material misrepresentation' is one that is a 'basic credit consideration' that has a "direct relationship to [the borrower's] ability to repay the loan." But Brooklyn Lender cited no cases that find that non-disclosure of an alleged beneficial owner would constitute a material misrepresentation at loan origination for purposes of accelerating a mortgage. However, the analysis here as to materiality is not necessarily legal but rather factual, which was within the discretion of the Bankruptcy Court to evaluate credibility and make factual determinaitions.

Consistent with the case law the Debtor cited in the claim objection, the case law Brooklyn Lender cited is either irrelevant, or involves an obvious relationship between a breached representation and a party's creditworthiness and ability to pay, albeit generally in contexts irrelevant to mortgage acceleration. *Deutsche Bank Nat'l Trust Co. v. Morgan Stanley Mortgage Capital Holdings LLC*, 289 F. Supp. 3d 484 (S.D.N.Y. 2018) (breach of contract for dumping risky loans into securitized loan package); *Katz v. Berisford Int'l PLC,* No. 96 CIV. 8695 (JGK), 2000 WL 959721 (S.D.N.Y. July 10, 2000) (breach of contract for taking $3,000,000 dividend paid while loan unpaid in violation of loan documents); *Veleron Holding, B.V. v. Morgan Stanley*, 117 F. Supp. 3d 404, 430 (S.D.N.Y. 2015) (whether information used constituted insider trading in securities fraud case); *In re Hawker Beechcraft, Inc.*, 486 B.R. 264 (Bankr. S.D.N.Y. 2013) (on executory contract assumption can't cherry pick contract obligations to avoid indemnification for

crew training); and *Loan Am. Fin. Corp. v. Talboom,* 163 Misc. 2d 199, 201, 620 N.Y.S.2d 221 (Sup. Ct. Suffolk Cty. 1994) (foreclosure action based on non-payment and misrepresentation of employment status on loan application).

Where a misrepresentation is not directly linked to creditworthiness and ability to pay, but merely supplemental to non-payment, the result is different. In *Tunnell Publishing Co. v. Straus Communications, Inc.*, 169 A.D.2d 1031 (3d Dep't 1991), for example, plaintiffs sought to accelerate a promissory note given by defendant Straus Communications, Inc. ("SCI") as part of a newspaper acquisition. The promissory note provided for the acceleration of the principal balance upon certain events, including a dissolution, merger, consolidation, reorganization, business failure, insolvency or termination of existence of the existence of the borrower. *Id*. at 1031.

After the closing, SCI sold one of its assets, a radio station. For tax reasons, SCI transferred its remaining assets and liabilities to a limited partnership that would continue SCI's business. Some of SCI's liabilities were satisfied and SCI's cash assets were distributed to the individual shareholders, whose interests in the limited partnership were in the same proportion as their interests in SCI. The limited partners also contributed approximately $1,000,000 in cash to the partnership. The partnership immediately took over SCI's business, including publication of the newspapers, which continued uninterrupted. SCI's obligation on the promissory note held by plaintiffs was assigned to the partnership, which made all required payments to plaintiffs. *Id*. at 1031.

The plaintiffs asserted that the note was properly accelerated because the restructuring of defendants' business resulted in the dissolution and insolvency of SCI. Defendants claimed that (i) the partnership was a substantially similar entity to SCI, "distinguishable only by its business structure;" (ii) the restructuring "was not an attempt to strip SCI of its assets, but a legitimate tax-

planning device similar to the one used by plaintiffs after their sale of the newspapers to SCI;" (iii) the security for the note "was not impaired by the restructuring;" (iv) the partnerships could pay the note and other obligations to plaintiffs and had been paying those obligations; and (v) plaintiffs continued to do business with the partnership, "including the acceptance of payments on the note without reservation." *Id*. at 1031-32. The Appellate Division, Third Department, affirmed the lower court and held that questions of fact precluded an award of summary judgment to plaintiffs. The Court held:

> Agreements providing for the acceleration of the entire debt upon the default of the obligor are often enforced in accordance with their terms, but where the breach asserted as the basis for the acceleration is trivial or inconsequential, the forfeiture may be viewed as an unconscionable penalty and equitable principles come into play. Each case must be decided on its own particular facts. Defendants' factual allegations, if true, establish that plaintiffs have sustained no damages, that the security bargained for by plaintiffs has not been impaired, that the successor obligor on the note is a viable, financially stable entity carrying on the business of the original obligor and that the essential part of the bargain -- timely payment of the installments due under the note -- has been and is being satisfied. Plaintiffs contend that since they bargained for and SCI executed a note providing for acceleration upon SCI's dissolution and such dissolution has occurred, the note must be enforced according to its terms without regard to whether the dissolution had any actual impact on plaintiffs. We disagree and conclude that defendants' allegations are sufficient to require denial of plaintiffs' motion for summary judgment since equitable principles may preclude enforcement of an unconscionable penalty.

*Id.* at 1032 (citations omitted).

Similarly, in *Home Savings Bank of Upstate New York v. Baer Properties, Ltd.*, 92 A.D.2d 98 (3d Dep't 1983), the disputed mortgage contained a "due-on-sale clause" providing that the mortgage would be accelerated and be immediately due and payable upon a sale of the *mortgaged* premises. *Id*. at 98-99. When the mortgagor, Baer Properties, Ltd. ("Ltd."), subsequently transferred the property to its president, Kenneth J. Baer ("Baer"), plaintiff notified Ltd. that it was

exercising its rights under the due-on-sale clause and demanded immediate payment of the entire principal balance. Ltd. failed to respond, and plaintiff filed a foreclosure action. *Id*. at 99.

Baer alleged that the due-on-sale clause was unenforceable because: (i) "plaintiff knew or should have known that Baer himself and not Ltd. was in fact the owner of the property and had to be in order to take advantage of certain individual tax deductions;" (ii) "title was placed in Ltd. at the insistence of plaintiff so that plaintiff could charge 9 1/2% interest and not the 8 1/2% which was the maximum then allowed for loans to private individuals;" (iii) title remained in Ltd. for only one day; (iv) the mortgage was not in default; (v) "plaintiff's security had not been impaired by the transfers;" and (vi) if requested by plaintiff, the property would be re-conveyed to Ltd. *Id*. at 99.

The Appellate Division, Third Department held:

> Because of these allegations we believe that Special Term was correct in denying plaintiff's motion for summary judgment. The courts of this State have not exercised their equitable powers to permit forfeiture in every instance when a due-on-sale clause has been violated. Instead, it has been recognized that under certain circumstances it may be inequitable to enforce a due-on-sale provision and that each case must be decided on its own particular facts. If, as contended, plaintiff knew that the true owner of the property was to be Baer individually, and if plaintiff wanted Ltd. to be the mortgagor only long enough to obtain a higher rate of interest on its loan, then the court sitting in equity in this action for foreclosure can restrict or restrain the due-on-sale clause provision if a contrary determination would be unconscionable or result in unfairness to defendants.

*Id*. at 99-100. (citations omitted; emphasis added).

*In re Northwest Airlines Corp.*, No. 05-19730, 2007 WL 3376895 (Bankr. S.D.N.Y. Nov. 9, 2009), the bankruptcy court denied default interest based upon a concealed breach of a loan agreement because no prior notice was given and the lender could not identify any actual harm or injury, explaining:

> UBS asserts that it should be permitted default interest on the entire accelerated amount of the debt even though it did not declare a default, because the

Debtors allegedly concealed a breach of the applicable loan documents which put it in default prior to the filing of their chapter 11 cases. On this record, UBS has not supported the proposition that the Debtors incurred liability when they replaced one engine with a similar engine or that any failure to disclose would justify the imposition of default interest. Although UBS quibbles that the Debtors did not act quickly enough and asserts that it would be inequitable to deny it default interest on all of the debt, UBS identifies no harm or damage from the engine substitution, other than legal fees.

*Id.* at *5.

Consistent therewith, the Bankruptcy Court correctly found that the trial testimony of Signature Bank's representative, Kenneth Stagnari, established that the loans were made based on the Properties themselves, not the guarantor. The loan evaluation hinged on the rental income and whether the properties could financially sustain the debt, not the ability of Strulovitch or his other business entities to pay, since each Property was owned and operated by a separate LLC. This was supported not only by the testimony of Mr. Stagnari but also Signature Banks own internal credit documents created at the time the loans originated. Contrary to Brooklyn Lender's assumption, the Strulovitch personal financial statement was only incidental to the loan underwriting, as the Bankruptcy Court correctly found that Signature Bank (or Brooklyn Lender) never undertook a meaningful credit analysis of Strulovitch or any other disclosed owner. Moreover, as noted by the Bankruptcy Court, Stagnari testified that he was **not aware of Signature Bank ever defaulting a borrower solely as a result of a non-monetary default**.

Brooklyn Lender selectively quotes from various cases to support a "step on a crack break-your mother's back rule" that does not exist. Ultimately, Brooklyn Lender cannot deny that equitable considerations exist under New York law, and that such equitable considerations preclude acceleration if the Court finds that alleged defaults were relatively or not material.

Brooklyn Lender's appeal and, similarly, their instant motion relied on an alleged scheme created entirely by Brooklyn Lender without any real support for a massive fraud on Signature to

justify the denial of equitable relief based on the doctrine of unclean hands. The facts simply do not support this concept and neither does the case law.

In support, Brooklyn Lender relied below on *Holm v. First Unum Life Ins. Co.*, 7 F. App'x 40, 41 (2d Cir. 2001) and *Med. Soc'y of the State of N.Y. v. UnitedHealth Grp. Inc.*, 332 F.R.D. 138, 150 (S.D.N.Y. 2019), neither of which is applicable here. In *Med. Soc'y*, the conduct alleged to be "unclean hands" was insurance fraud in the form of (1) using deceptive coding in billing claims; (2) ignoring regulatory statements that it was not entitled to facility fees; (3) billing for services that were not provided; (4) deliberately inflating bills; and (5) employing a specific billing service because it would inflate bills. *Id.* The Court held that unclean hands applies where the misconduct that forms the basis for the defense is directly related to the interests at stake. The court concluded that unclean hands was not applicable.

In *Holm,* an insurance company denied Holm disability benefits because Holm missed the deadline for filing an administrative appeal. Holm argued that the insurance company had unclean hands because it was late in notifying him that his claim was denied, and that it would be inequitable for First Unum to defeat his cause of action based on his untimeliness when it also did not meet the deadlines proscribed in the plan. The court found no unclean hands. 7 F. App'x at 41.

The result should be same here, even though there is zero correlation between insurance fraud and the claimed herein. The alleged defaults asserted by Brooklyn Lender, even if true, were non-material to the Debtors' ability to repay the Signature loans, as demonstrated by the absence of any material payment default or outstanding material violations or material outstanding real estate tax and water claims.

Indeed, not only do courts look to the borrower's conduct, the Appellate Division, Second Department applied the same principles when it reversed the trial court's granting of a plaintiff's motion for summary judgment in a foreclosure action and held that "appellant is entitled to its day in court to explore the possibility that the mortgagees' conduct in accelerating the mortgage debt may have constituted overreaching." *Berman v. Blooming Farms Joint Venture*, 50 A.D.2d 558, 558 (2d Dep't 1975).

Outside of the mortgage acceleration context, courts in New York have similarly held that whether to enforce an acceleration clause depends on the particular facts of the case. In *Karabu v. Pension Benefit Guaranty Corp.*, No. 96 Civ. 4960 (BSJ), 1997 WL 759462, *15 (S.D.N.Y. 1997), for example, the Court declined to enforce an acceleration clause in a security agreement on account of TWA's failure, as required by security agreement, to seek the trustee's consent prior to obtaining from the F.A.A. short term extensions in excess of 150 hours for 21 maintenance operations on a specific plane. The Court noted that TWA had performed thousands of maintenance operations and that the value of the plaintiff's collateral "has held steady or, in fact, increased. In this context, the trivial or inconsequential failure to obtain prior consent for 21 short term extensions cannot -- equitably -- form the basis for acceleration of TWA's debt." *Id*. at *14.

Courts in other jurisdictions follow the same rule. For example, the Ninth Circuit explained in the context of a loan acceleration for leasing an aircraft without the lender's consent:

> Acceleration clauses are designed to protect the creditor from actions by the debtor which jeopardize or impair the creditor's security. They are not to be used offensively, e. g., for the commercial advantage of the creditor. Acceleration is a harsh remedy with draconian consequences for the debtor. Acceleration is a matter of equity and the courts, including those of Texas, have historically been careful to evaluate the fairness of acceleration in the particular facts of a case.

*Brown v. AVECMO Inv. Corp.*, 603 F.2d 1367, 1376 (9th Cir. 1979).

In *Brown*, the Ninth Circuit held that "the facts before the trial court demanded the incorporation of equity considerations into the instructions to the jury. The facts sufficiently suggested the possibility that . . . the creditor accelerated not out of a reasonable fear of security impairment but rather from an inequitable desire to take advantage of a technical default." *Id.* at 1370; *see also Neuro-Rehab Associates, Inc. v. AMRESCO Commercial Finance, L.L.C.*, No. CIVA 05–12338–GAO, 2006 WL 1704258, *4 (D. Mass. June 19, 2006) ("Specifically, acceleration and foreclosure have been barred as inequitable in circumstances where the default relied upon to accelerate was technical or minor and resulted in no prejudice or impairment to the lender's security interest or where the acceleration was not being exercised as a means to protect the lender's security interest but instead was motivated by inequitable considerations, such as the lender's desire to take advantage of a technical default to coerce full payment."); *Mills v. Nashua Federal Savings and Loan Assoc.*, 121 N.H. 722 (S. Ct. New Hampshire 1981) (in the context of a borrower's violation of a due on sale clause, "a court in equity may refuse to allow a mortgage to be foreclosed when acceleration of the due date would amount to unconscionable or inequitable conduct by a lender. . . . We suggest that there may be a number of situations . . . which should be considered . . . as possible exceptions to the strict enforcement of due-on-sales clauses." (citation omitted)); *Consolidated Capital Properties, II, LTD. v. National Bank of North America*, 420 So.2d 618, 620 (Fla. 5th DCA 1982) (in the context of a due on sale clause following an ownership change, "Whether an acceleration provision of a mortgage may be utilized as a basis for foreclosure is dependent upon the facts and upon whether the invocation of the acceleration clause would be inequitable under the circumstances.") (citation omitted).

Brooklyn Lender argues that equitable relief is nonetheless rare following acceleration. That is probably because loan acceleration for a non-monetary default on a performing loan is even

rarer. Indeed, the Signature Bank representative testified that he was not aware of even a single non-monetary default declared on any Signature commercial loans.

Predictably, and contrary to the facts of this case, almost all of the cases Brooklyn Lender cited below follow acceleration against a borrower deep in **monetary** default. *Fed. Home Loan Mortg. Corp. v. Bronx New Dawn Renaissance VII, L.P.*, No. 93 CIV. 7970 (CSH), 1995 WL 412399 (S.D.N.Y. July 11, 1995); *In re Downtown Athletic Club of New York City, Inc.*, 1998 WL 898226, at *11 (Bankr. S.D.N.Y. Dec. 21, 1998)*Nassau Trust Co. v. Montrose Concrete Prods. Corp.,* 56 N.Y.2d 175, 183, 451 N.Y.S.2d 663 (1982); *Key Int'l Mfg. Inc. v. Stillman*, 103 A.D.2d 475, 477, 480 N.Y.S.2d 528, 530-31 (2d Dep't 1984), *aff'd as modified,* 66 N.Y.2d 924, 489 N.E.2d 764 (1985); *Fifty States Mgt. Corp. v. Pioneer Auto Parks*, 46 N.Y.2d 573, 577, 415 N.Y.S.2d 800, 803 (1979); *Deutsche Bank Nat. Tr. Co. v. Pascarella*, 39 Misc. 3d 1227(A), at *6, 971 N.Y.S.2d 70 (Sup. Ct. Suffolk Cty. 2013).

Bay way of contrast, it is not rare, absent the existence of a monetary default, for a court to grant equitable relief following acceleration for on a **non-monetary** default. As the case law in the non-monetary default context cited above illustrates, this is particularly so where, as here, the lender's predatory intent was apparent. Based on the case law, the alleged defaults here, even if they had been proven, are too technical and non-material to justify acceleration and the imposition of 24% interest.

Regarding post-bankruptcy interest for the period since these cases were filed, there is no rule requiring such payment as Brooklyn Lender suggests. Rather, the rule under section 506(b) of the Code is that the allowance of post-petition interest is subject to equitable considerations, and here the equitable considerations show that Brooklyn Lender is not entitled to default interest.

The right to pendency interest under the Bankruptcy Code is governed by Section 506(b), which provides in relevant part that:

> To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement or State statute under which such claim arose.

The Supreme Court examined the scope of Section 506(b) in *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 109 S. Ct. 1026, 1030-1031 (1989), which permitted payment of post- petition interest on an oversecured nonconsensual tax lien. According to the Supreme Court:

> The phrase "interest on such claim" is set aside by commas, and separated from the reference to fees, costs, and charges by the conjunctive words "and any." As a result, the phrase "interest on such claim" stands independent of the language that follows. "[I]nterest on such claim" is not part of the list made up of "fees, costs, or charges," nor is it joined to the following clause so that the final "provided for under the agreement" modifies it as well. The language and punctuation Congress used cannot be read in any other way. By the plain language of the statute, the two types of recovery are distinct.  (Internal citations and footnotes omitted).

While *Ron Pair* made clear that oversecured creditors are entitled to post- petition interest, the Supreme Court did not address which rate applies. In the years following, case law indicates that the contract default rate is a presumptive rate that is subject to adjustment based on "equitable considerations." *See, e.g. In re General Growth Props., Inc.,* 451 B.R. 323, 326 (Bankr. S.D.N.Y. 2011).

Courts have developed four factors: (i) whether there was creditor misconduct, (ii) whether application of the default interest rate would cause harm to the unsecured creditors, (iii) whether the default interest rate constitutes a penalty, and (iv) whether the default interest rate would impair debtor's fresh start. *General Growth, Id* at 328; *In re Vest Assoc.,* 217 B.R. 696 (Bankr. S.D.N.Y. 1998).

At first blush, these factors appear to help Brooklyn Lender, since the value of the Appellees' Properties exceeds the claims against the Appellees' estates. But the Appellees' reorganization is contingent upon refinancing the Brooklyn Lender debt. Reorganization would be jeopardized by refinancing additional default interest. Thus, payment of post-petition default interest would interfere with the Debtor's reorganization and ultimately payment to creditors. For this reason alone, Brooklyn Lender is not entitled to post-petition default interest.

The analysis does not change based on Brooklyn Lender's assertion that the Chapter 11 filing is itself an event of default that triggers default interest. In the first instance, the notion is counterintuitive since Brooklyn Lender's misconduct is the cause of the Chapter 11 filing. It accelerated based on defaults that did not exist in a predatory attempt to either effectuate a forfeiture or earn 24% interest, despite the fact that it lacked evidence of the alleged defaults and despite the fact that the loans were performing loans. Misconduct can take many forms, and common-sense dictates that improperly forcing a debtor to invoke its statutory right to file Chapter 11 to free-up its Properties is one of them.

*In re Bownetree, LLC,* 2009 WL 2226107, at *5 (Bankr. E.D.N.Y. 2009) is persuasive authority to deny default interest when the default involves commencement of a Chapter 11 case. After noting that the lender was paid the full amount of its bargain under the loan, the Court declined to impose default rate interest, stating "Any default on the part of the debtor was a technical default under the terms of the contract ... Therefore, it would be inequitable to enforce the default rate under these circumstances."

As to the penalty criteria, Section 506(b) turns on proportionality. A default rate that is significantly higher and disproportionate to the non-default rate is viewed with skepticism in bankruptcy and treated as a penalty. *In re White,* 88 B.R. 498, 511 (Bankr. D.Mass. 1988) ("default

rate at issue here is nothing more than a device (akin to a sledgehammer) to coerce the debtors into prompt payment."). As the Second Circuit Court of Appeals pointed out in *In re Milham,* 141 F.3d 420, 423 (2d Cir 1998), "[m]ost courts have awarded pendency interest at the contractual rate; but nevertheless, however widespread this practice may be, it does not reflect an entitlement to interest at the contractual rate."

In *In re Kalian,* 178 B.R. 308 (Bankr. D.R.I. 1995), for example, the loan was current until the filing of the bankruptcy petition, and was paid in full following the sale of the Debtor's real property. The Court found that the loan was never at risk, negating the basis for the imposition of default rate interest even without post-petition payments:

> Fischer's claim to default interest fails because to honor it would be inimical to federal bankruptcy law's concern for the fair and equitable distribution of the debtor's assets.
>
> The time value of money lent has been paid to Fischer through the . . . interest rate. Fischer has not argued that the base rate has not been (at least) comparable to prevailing market rates at and following default. Although Fischer asserts that "a less creditworthy borrower must pay a premium to obtain the continued use of money," it must be remembered that the default here was a payment default triggered by bankruptcy. Throughout the course of Kalian's bankruptcy Fischer's collateral's value was protected and its claim was adequately protected by an equity cushion. Had the collateral been threatened, Fischer could have sought adequate protection or moved for relief from stay for cause. § 362(d)(l). There was never any cognizable risk that Fischer would go unpaid, or even underpaid.
>
> To the extent that default interest might be justified by the increased cost of administering and collecting a defaulted loan, it cannot be so justified here. In as much as it has requested them, and its agreement provides for them, Fischer will recover its *reasonable* 'fees, costs and charges.'

The same analysis should apply here as well, since Brooklyn Lender cannot point to any cognizable risk that the loan would go unpaid. From day one of these cases, Brooklyn Lender was never in doubt about getting repaid. The Debtor missed no payments during the Chapter 11 case, even in the middle of a global pandemic lockdown. Given the absence of risk of non-payment,

the default rate is disproportionately high. These factors distinguish this case from most of the decisions involving post-petition default interest by a non-paying borrower.

Against this background, Brooklyn Lender relies on *In re Moshe*, 567 B.R. 438, 449 (Bankr. E.D.N.Y. 2017), *In re Gen. Growth Properties, Inc.*, 451 B.R. 323, 331 (Bankr. S.D.N.Y. 2011), and *In re 1111 Myrtle Ave. Grp., LLC*, 598 B.R. 729 (Bankr. S.D.N.Y. 2019). *General Growth* is distinguishable for two reasons. First, the parties there stipulated that the default rate under the contract of 3 points (as opposed to the 19 points here) was not a penalty. Second, the reorganization plan in *General Growth* provided for a cure and reinstatement of the subject mortgage under Section 1123(d). The Court found that Section 1123(d) specifically requires the amount of the cure to be determined "in accordance with the underlying agreement and applicable nonbankruptcy law." *In re General Growth Props., Inc.*, 451 B.R. at 331.

Section 1123(d) is different from Section 506(b), where the pendency rate of interest is guided by, but not always governed by, the underlying note. *In re Moshe*, 567 B.R. 438 (Bankr. E.D.N.Y. 2017), also cited by Brooklyn Lender, contains similar holdings that the Section 1123(d) cure and reinstate provisions require payment of default interest under state law, and are likewise distinguishable on the ground that Brooklyn Lender here will be paid in full without reinstatement.

In summary, Brooklyn Lender's demand for default interest is based on a self-created default despite there being no cognizable risk that the these fully performing loans would go unpaid.

Last, but not least, Brooklyn Lender cited *Ruskin v. Griffiths*, 269 F.2d 827, 832 (2d Cir. 1959) and *In re 785 Partners LLC,* 470 B.R. 126 (Bankr. S.D.N.Y. 2012). Those were solvent debtor cases. Where, as here, "the application of the contractual interest rate would harm the unsecured creditors or impair the debtor's fresh start," the court has the "power to modify the

contract rate based on notions of equity." *Id. at* 134. Since payment of default interest in this case would cripple the Debtor's fresh start by undermining the Appellees' financing, and effectively impair value for any party except Brooklyn Lender, the Bankruptcy Code provides an additional basis for this Court to exercise equitable jurisdiction to strike default interest.

For all of the reasons stated above, Brooklyn Lender is unlikely to succeed on either of the two appeals it is pursuing, thus further mandating that an imposition of a stay pending a hearing and determination of those appeals is not warranted.

## <u>CONCLUSION</u>

Based on the foregoing, Brooklyn Lender has failed to meet its burden to justify a stay pending appeal in this matter. Accordingly, the instant motion should be denied.

Dated: Brooklyn, New York
     June 19, 2021

ABRAMS, FENSTERMAN, FENSTERMAN, EISMAN, FORMATO, FERRARA, WOLF & CARONE, LLP
Special Counsel for the Debtors

By: _Andrea J Caruso_____
Andrea J. Caruso
John Cahalan
1 Metrotech Center, Suite 1701
Brooklyn, NY 11201